**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| WELLMADE FLOOR COVERINGS INTERNATIONAL, INC., *et al.*,[1] | Case No. 25-58764 |
| Debtors. | (Jointly Administered) |
|  | **Related to Docket No. 15** |

**NOTICE OF FILING MODIFIED PROPOSED SECOND INTERIM
ORDER (A) AUTHORIZING THE DEBTORS TO
OBTAIN POSTPETITION FINANCING AND TO USE CASH
COLLATERAL, (B) GRANTING LIENS AND SUPERPRIORITY CLAIMS,
(C) GRANTING ADEQUATE PROTECTION, (D) MODIFYING THE
AUTOMATIC STAY, AND (E) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that on August 5, 2025, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed the *Emergency Motion of the Debtors for Entry of Interim and Final Orders (A) Authorizing the Debtors to Obtain Postpetition Financing and to Use Cash Collateral, (B) Granting Liens and Superpriority Claims, (C) Granting Adequate Protection, (D) Modifying the Automatic Stay, and (E) Granting Related Relief* [Docket No. 15] (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that, on August 7, 2025, the Court entered the *Interim Order Granting Emergency Motion for (A) (1) Authority to Incur Post-Petition Secured Indebtedness, (2) Authority to Grant Superpriority Status Pursuant to 11 U.S.C. § 364(c), (3) Authority to Grant Priming Liens Pursuant to 11 U.S.C. § 364(d), (B) Authorizing Postpetition Use of Cash Collateral and Granting Adequate Protection, (C) Modifying the Automatic Stay, (D) Scheduling A Final Hearing, and (E) Granting Related Relief* [Docket No. 30] (the "Interim Order");

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit A** is a modified proposed *Second Interim Order (A) Granting Debtors' Motion for (1) Authority to Incur Post-Petition Secured Indebtedness, (2) Authority to Grant Superpriority Status Pursuant to 11 U.S.C. § 364(c), (3) Authority to Grant Priming Liens Pursuant to 11 U.S.C. § 364(d), (B) Authorizing Postpetition Use of Cash Collateral and Granting Adequate Protection, (C)*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Wellmade Industries MFR. N.A LLC (1058) and Wellmade Floor Coverings International, Inc. (8425).  The mailing address for the Debtors for purposes of these chapter 11 cases is: 1 Wellmade Drive, Cartersville, GA 30121.

*Modifying the Automatic Stay, and (D) Granting Related Relief* (the "Proposed Second Interim Order"), which contains comments from the DIP Lender and the Committee.

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit B** is a blackline of the modified Proposed Second Interim Order against the version previously filed at Docket No. 68.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Interim Order, a hearing to consider the relief requested in the Motion will be held before the Honorable Sage M. Sigler, United States Bankruptcy Judge, **Courtroom 1202 in the Richard B. Russell Federal Building and United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia, 30303 on August 21, 2025 at 10:00 a.m. (prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that copies of all documents filed in the above captioned chapter 11 cases are available free of charge by visiting the case website maintained by the Debtors' notice and claims agent, Kurtzman Carson Consultants, LLC dba Verita Global, at https://www.veritaglobal.net/Wellmade or by calling (866) 927-7076. You may also obtain copies of any pleadings by visiting the Office of the Clerk, U.S. Bankruptcy Court for the Northern District of Georgia (Atlanta Division) between 8:00 a.m. and 4:00 p.m. or online by visiting the Court's website at http://ecf.ganb.uscourts.gov (registered users) or at http://pacer.psc.uscourts.gov (unregistered users). Further information may be obtained by using the "Submit an Inquiry" function at https://www.veritaglobal.net/Wellmade/inquiry.

Dated: August 20, 2025
      Atlanta, Georgia

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

*/s/ John D. Elrod*
John D. Elrod, GA Bar No. 246604
Allison J. McGregor, GA Bar No. 860865
3333 Piedmont Road NE, Suite 2500
Atlanta, GA 30305
Telephone: 678-553-2259
Facsimile: 678-553-2269
Email: elrodj@gtlaw.com
Allison.McGregor@gtlaw.com

*Proposed Counsel for the Debtors and Debtors in Possession*

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 20, 2025, all ECF participants registered in these Chapter 11 Cases were served electronically with the foregoing notice through the Court's ECF system at their respective email addresses registered with this Court.

By: <u>*/s/ John D. Elrod*</u>
John D. Elrod

ACTIVE 714033782

## **Exhibit A**

(Modified Proposed Second Interim Order)

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| WELLMADE FLOOR COVERINGS INTERNATIONAL, INC. *et al.*,[1] | Case No. 25-58764-SMS |
| Debtors. | |

**SECOND INTERIM ORDER GRANTING EMERGENCY MOTION FOR (A) (1) AUTHORITY TO INCUR POST-PETITION SECURED INDEBTEDNESS, (2) AUTHORITY TO GRANT SUPERPRIORITY STATUS PURSUANT TO 11 U.S.C. § 364(c), (3) AUTHORITY TO GRANT PRIMING LIENS PURSUANT TO 11 U.S.C. § 364(d), (B) AUTHORIZING POSTPETITION USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION, (C) MODIFYING THE AUTOMATIC STAY, (D) SCHEDULING A FINAL HEARING, AND (E) GRANTING RELATED RELIEF**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Wellmade Industries MFR, N.A. LLC (1058) and Wellmade Floor Coverings International, Inc. (8425). The mailing address for the Debtors for purposes of these chapter 11 cases is: 1 Wellmade Drive, Cartersville, GA 30121.

This matter came before the Court on August 20, 2025 on an expedited basis on the Emergency Motion [Doc. No. 15] (the "**Motion**")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") seeking the entry of an interim order (the "**Interim Order**") and a final order (the "**Final Order**"), pursuant to §§ 105, 361, 362, 363, 364(c), 364(d), 507(b), and 552(b) of Title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rule 7007-1, 9013-1, 9013-2, and 9014-2 of the Local Rules of the United States Bankruptcy Court for the Northern District of Georgia (the "**Local Rules**") and *Second Amended and Restated General Order 26-2019, Procedures for Complex Chapter 11 Cases*, dated February 6, 2023 (the "Complex Case Procedures"): (1) authorizing the Debtors to obtain post-petition financing consisting of a superpriority secured multi-draw term loan credit facility in the aggregate amount not to exceed $4,000,000.00 (the "**DIP Facility**") under the *Senior Secured Debtor-in-Possession Loan and Security Agreement* (the "**DIP Agreement,**" attached hereto as Exhibit "1") between SummitBridge National Investments VIII LLC (the "**DIP Lender**") and the Debtors; (2) authorizing the Debtors to enter into the DIP Loan Documents (as defined in the DIP Agreement); (3) granting the DIP Lender superpriority administrative expense claims pursuant to 11 U.S.C. § 364(c), subject to the Carve-Out; (4) granting priming liens pursuant to 11 U.S.C. § 364(d) to the DIP Lender, subject to the Carve-Out; (5) authorizing the postpetition use of proceeds of the DIP Facility and Cash Collateral in accordance with the Initial Budget (as defined herein); (6) granting adequate protection on account of the diminution in the value of the Prepetition Collateral (as

---

[2] Capitalized terms used, but not defined, herein shall have the meaning ascribed to such terms in the Motion or DIP Agreement, as applicable.

ACTIVE 714056660v1

defined herein) as a consequence of the Debtors' use, sale or lease of the Prepetition Collateral, including any Cash Collateral (as defined herein); (7) subject to entry of the Final Order (as defined herein) and to the extent set forth herein, waiving the Debtors' right to surcharge the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code; (8) modifying the automatic stay to the extent necessary to implement and effectuate the terms of this Interim Order; (9) scheduling a final hearing on the Motion (a "**Final Hearing**") pursuant to Bankruptcy Rule 4001; (10) waiving any applicable stay with respect to the effectiveness and enforceability of this Interim Order (including a waiver pursuant to Bankruptcy Rule 6004(h)); and (11) granting related relief, all as more fully set forth in the Motion.

The Court has considered the Motion, the presentation of counsel at the hearing, and the entire record and has determined that approval of the relief requested in the Motion is necessary to avoid immediate and irreparable harm to Debtors and their estates and is fair and reasonable and in the best interest of the Debtors, their estates, and all parties in interest, and is essential for the preservation and continued operation of the Debtors' business and the maximization of the value of Debtors' assets; and it appearing that the Debtors' entry into the DIP Loan Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and for good and sufficient cause appearing therefore, hereby finds and determines as follows:[3]

A.      On August 4, 2025 (the "**Petition Date**"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy

---

[3] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any findings of fact constitute conclusions of law, they are adopted as such, and *vice versa*.

Court for the Northern District of Georgia (this "**Court**").  The Debtors have continued to manage and operate their businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  On August 14, 2025, the Office of the United States Trustee appointed a statutory committee of unsecured creditors (the "**Committee**") in the Chapter 11 Cases.  As of the date hereof, no trustee or examiner has been appointed in the Chapter 11 Cases. On August 4, 2025, this Court entered an order directing joint administration of the Chapter 11 Cases.

B.    This Court has core jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue for the Chapter 11 Cases and proceedings on the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 507(b), and 552(b) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, Local Rules 7007-1, 9013-1, 9013-4, and 9014-2, and Section G of the Complex Case Procedures.

C.    The Debtors' current liquidity is insufficient to fund the costs of administration of these Chapter 11 Cases and the Debtors' expenses in the ordinary course of their business operations.  Despite their efforts, the Debtors have been unable to find another entity willing to provide financing upon terms as favorable as the DIP Lender proposes.  The Debtors are unable to obtain unsecured credit.  The Debtors also are unable to obtain secured credit allowable under § 364(c) of the Bankruptcy Code without granting priming liens under § 364(d)(1) of the Bankruptcy Code and superpriority claims under the terms and conditions set forth in this Interim Order and in the DIP Agreement.  The Debtors believe that the DIP Financing (as defined herein) under the

terms of the DIP Agreement will be made upon terms at least as favorable as any other financing it can obtain.

  D. The Debtors have requested that (i) the Prepetition Lender agree to the Debtors entering into the DIP Agreement in accordance with the terms set forth herein and permit the Debtors to use the Prepetition Lender's Cash Collateral in accordance with the terms set forth herein, and (ii) the DIP Lender enter into the DIP Facility under which the Debtors may obtain loans from the DIP Lender through multi-draws in an aggregate principal amount not to exceed $4,000,000 (the "**DIP Loan**").  The DIP Lender is willing to establish the DIP Facility upon the terms and conditions set forth in the DIP Agreement and the Final Order up to the amount of $4,000,000, inclusive of the First DIP Draw (as defined below) approved by this Interim Order.

  E. The "**Interim DIP Financing**" consists of a One Hundred Twenty Thousand Dollar ($120,000.00) draw by the Debtors under the DIP Agreement upon entry of this Interim Order (the "**First DIP Draw**") and the second and final draw of three million eight hundred eighty thousand dollars ($3,880,000) (the "**Final DIP Draw,**" together with the First DIP Draw, the "**DIP Draws**") under the conditions delineated in paragraph I(2).

  F. On August 7, 2025, the Court entered the *Interim Order Granting Emergency Motion for (A) (1) Authority to Incur Post-Petition Secured Indebtedness, (2) Authority to Grant Superpriority Status Pursuant to 11 U.S.C. § 364(c), (3) Authority to Grant Priming Liens Pursuant to 11 U.S.C. § 364(d), (B) Authorizing Postpetition Use of Cash Collateral and Granting Adequate Protection, (C) Modifying the Automatic Stay, (D) Scheduling a Final Hearing, and (E) Granting Related Relief* [Docket No. 30].

G.      The DIP Lender's willingness to establish the DIP Facility and to fund the DIP Loan, including the DIP Draws,  is conditioned upon the Debtors' satisfaction of all conditions precedent and certain milestones as set forth in Sections 2 and 7 of the DIP Agreement (the "**Conditions and Milestones**") and (i) the Debtors obtaining Court approval to enter into the DIP Agreement (and all documents related to the DIP Agreement) and to incur all obligations of the Debtors thereunder; (ii) the DIP Lender being granted as security for the prompt payment and performance of all obligations under the DIP Agreement (the "**DIP Obligations**," as defined below), first priority, perfected security interests in and priming liens in the Collateral (as defined in paragraph 11(b)(i) of this Interim Order).

H.      Upon the Debtors' receipt of the First DIP Draw, the Debtors shall become borrowers under the DIP Agreement and DIP Loan Documents.

I.      Prior to the Petition Date, the DIP Lender received a One Hundred Fifty Thousand Dollar ($150,000.00) nonrefundable expense deposit under the terms of the DIP Agreement (the "**Expense Deposit**").  The DIP Agreement provides for the DIP Lender to receive a break-up fee in the event that a third-party lender provides the Debtors with an alternative debtor in possession facility that is approved by a final DIP order, the DIP Lender shall be entitled to a break-up fee of One-Hundred Twenty Thousand Dollars ($120,000.00) which shall be deemed to be earned upon entry of any such final DIP order and shall be an administrative expense in the Bankruptcy Case. After application of the Expense Deposit to the DIP Lender's reasonable transaction costs and legal fees, the DIP Lender shall apply the amount remaining in its Expense Deposit to the Break-Up Fee.  If the amount remaining in the Expense Deposit is not sufficient to cover the entire Break-

6

Up Fee, the remaining amount of the Break-Up Fee shall be paid from the loan proceeds of the alternative DIP facility or from the Debtors' cash on hand.

J.      The material terms of the DIP Agreement for repayment of the DIP Loan are:

(1)      Upon entry of this Interim Order and the Debtors' compliance with the Conditions and Milestones, the DIP Lender shall be authorized to fund the First DIP Draw to be applied to the DIP Lender's Underwriting Fee and Origination Fee, both of which are defined in the DIP Agreement.

(2)      The Final Draw was funded upon the Debtors' designation of a Stalking Horse Bid.

(3)      The DIP Draws (also known as the "**DIP Financing**") shall be used by the Debtors solely for the purposes set forth in the DIP Agreement, including to pay expenses subject to the Budget, as it may at any time be amended, supplemented, updated or extended with the prior written consent of the DIP Lender.

(4)      The Debtors shall execute and deliver such other agreements and documents as the DIP Lender shall reasonably require in connection with the DIP Financing.  The DIP Financing shall become an obligation of the Debtors concurrently with their receipt of funding pursuant to the DIP Agreement.  The DIP Loan shall be secured by duly perfected DIP Liens and DIP Security Interests (as defined in paragraph 9 below) in favor of the DIP Lender in the Collateral.  The DIP Lender is willing to advance the DIP Financing upon the terms and conditions set forth herein and in the DIP Agreement.

(5)      The DIP Financing balance shall bear interest at the rate of twelve percent (12%) per annum on an actual/360 day basis and be payable in arrears (the "**Interest Rate**")

7

as set forth in the DIP Agreement. The interest payments shall be paid on the first business day of each calendar month (the "**Interest Payments**"). The DIP Lender shall credit the Interest Payments each month from an interest payment reserve which shall be a segregated funding account established for the sole benefit of DIP Lender to fund the Interest Payments (the "**Interest Payment Reserve**").

(6)    The limit for the DIP Financing shall be up to Four Million Dollars ($4,000,000.00).

(7)    The "**DIP Obligations**" shall include all indebtedness, liabilities, obligations, covenants and duties now or at any time or times hereafter owing by the Debtors to DIP Lender pursuant to or in connection with the DIP Agreement, this Interim Order and any Final Order, or any other DIP Loan Document including all principal, interest, fees (including, but not limited to, the Origination Fee, any Extension Fee, the Underwriting Fee, and the Exit Fee), indemnification, and reimbursement payments, costs, and expenses (including all reasonable fees and expenses of counsel to DIP Lender).

(8)    The DIP Lender shall be entitled to conduct periodic field exams upon reasonable notice to the Debtors.

(9)    The Debtors' obligation to repay the DIP Obligations shall be secured by a security interest in, and lien upon, all of the Debtors' Collateral (the "**DIP Liens and DIP Security Interests**"), excluding avoidance actions under chapter 5 of the Bankruptcy Code and state law (collectively, "**Avoidance Actions**"). The DIP Obligations and DIP Liens and DIP Security Interests shall be an allowed first priority secured claim, under

8

Bankruptcy Code § 364(d), fully payable before any other secured claim, and a superpriority claim under Bankruptcy Code § 364(c) (the "**DIP Superpriority Claim**"), prior to and superior in right of payment of any other claim against the Debtors or their estates, heretofore or hereafter arising or incurred in this case or any succeeding or superseding case under the Bankruptcy Code.

(10)    Each of the terms and conditions of the DIP Financing contained in the DIP Agreement are incorporated herein by this reference, except, to the extent the Interim Order differs from the DIP Agreement, the Interim Order shall control.

(11)    The DIP Liens and DIP Security Interests shall be deemed effective, valid, and perfected as of the date of the entry of the Interim Order, without the necessity of the giving of any notice, the filing of any documents or other instruments or the taking of any action otherwise required to be given, filed or taken under applicable non-bankruptcy law for the perfection of security interests or mortgages, with such validity and perfection being binding upon any subsequently appointed trustee, either in this Chapter 11 case or a case under any other chapter of the Bankruptcy Code, and on any and all other creditors of the Debtors who have or may hereafter extend credit to the Debtors, or file a claim of any nature whatsoever, in this Chapter 11 case or any superseding bankruptcy case of the Debtors. If the DIP Lender shall, in its sole discretion, choose to file such financing statements and otherwise confirm perfection of such security interests and liens, all such financing statements or similar instruments shall be deemed to have been filed or recorded at the time and on the date of entry of the Interim Order and the automatic stay of 11 U.S.C.

9

§ 362 shall be deemed modified to permit any and all such filings without further order of the Court.

(12)   The priority of the DIP Liens and DIP Security Interests and the DIP Superpriority Claim granted under the Interim Order shall not be "primed" pursuant to 11 U.S.C. § 364(d), nor shall any of the DIP Lender's rights under the Interim Order be modified or affected by any plan of reorganization confirmed in this Chapter 11 case without the express written consent of the DIP Lender.

(13)   Subject to the Carve-Out, no indebtedness or obligation of the Debtors of any kind or nature whatsoever (other than future obligations to the DIP Lender) shall be repayable or secured on a parity with, or in any manner be prior to the DIP Obligations. Moreover, any security interests or liens upon any of the Debtors' assets which, after taking into account the provisions of this Interim Order, may be avoided by the Debtors or any subsequently appointed trustee and which are preserved by the estate shall be junior and subordinate to the DIP Liens and DIP Security Interests.

(14)   In the event the Debtors default under the terms of the DIP Agreement or this Interim Order and Debtors fail to cure such default within five (5) business days from the date of written notice of the default pursuant to the terms of the DIP Agreement,  and if the Debtors fail to do so, the DIP Lender may file a notice of default on the dockets of the Chapter 11 Cases (the "**Default Declaration**").  The Default Declaration shall be served via electronic mail on the following (a) Proposed Counsel for the Debtors, John D. Elrod (elrodj@gtlaw.com) and Allison McGregor (Allison.McGregor@gtlaw.com); (b) counsel for AHF IC, LLC, Austin Jowers (AJowers@KSLAW.com) and Christopher Coleman

ACTIVE 714056660v1

(Christopher.Coleman@kslaw.com); the Office of the United States Trustee, c/o Lindsay

Kolba (Lindsay.P.Kolba@usdoj.gov) and counsel to the Committee.   If Debtors or any

other party in interest fail to respond to the Default Declaration within three (3) business

days, the automatic stay provisions in § 362 of the Bankruptcy Code shall be vacated and

modified as set forth in the DIP Agreement and this Interim Order.  The Debtors are further

deemed to waive all rights to notice and hearing of any kind prior to the exercise by the

DIP Lender of its rights to repossess the Collateral or to replevy, attach or levy upon such

Collateral without prior notice or hearing.  The rights, remedies, powers and privileges

conferred upon the DIP Lender pursuant to this Interim Order shall be in addition to and

cumulative with those contained in the DIP Lender in the DIP Agreement, the DIP Loan

Documents or created under applicable law.

K.      The Debtors have made diligent inquiry to find other sources of funding to support

Debtors' post-petition financial needs. The Debtors believe that the terms and conditions of the

proposed borrowing from the DIP Lender, as laid out in the DIP Agreement, as modified herein,

are fair and reasonable, were negotiated by the parties in good faith, and are the best available

terms to the Debtors under the present market conditions and financial circumstances of the

Debtors.  The Debtors are unable to obtain unsecured credit or credit that is not secured by a senior

lien on the Collateral as described herein. The proposed Interim Draw, upon the terms and

conditions set forth in the DIP Agreement and this Interim Order, is essential and necessary for

the preservation and maintenance of the Debtors' estates

L.      It is in the best interests of the Debtors, their estates and their creditors that Debtors

be given the authority to consummate, and that this Court approve and order the consummation by

11

Case 25-58764-sms    Doc 79    Filed 08/20/25    Entered 08/20/25 23:16:04    Desc Main
Document      Page 16 of 82

Debtors, of the Interim Draw, and to execute and deliver any and all other documents and instruments reasonably requested by the DIP Lender to execute, effectuate, carry out, or consummate the terms and conditions of the Interim Draw as set forth in the DIP Agreement and this Interim Order.

      M.    The DIP Lender is acting in good faith in offering to provide the DIP Facility to Debtors on the terms described herein and in the DIP Agreement.

      N.    Without prejudice to the rights of the Committee and other parties in interest to bring any Claims and Defenses during the Challenge Period (each as defined below), the Debtors admit, stipulate, acknowledge, and agree (and this Paragraph C hereof shall be referred to herein collectively as the "**Debtors' Stipulations**") as follows:

      a.    <u>Prepetiton Obligations</u>.  As of the Petition Date, all of the Debtors were unconditionally indebted and liable to the Prepetition Lender (as defined herein), without defense, counterclaim or offset of any kind, for the following: all debts, liabilities and obligations of every kind and nature owed by the Debtors under the Prepetition Loan Documents (as defined herein), including, without limitation pursuant to that certain (i) Loan Agreement, dated as of March 29, 2024, related to a term loan (the "**Prepetition Term Loan**") in the original principal amount of $20,000,0000 (as has been or may be further amended, restated, supplemented or otherwise modified from time to time, the "**Prepetition Term Loan Agreement**" and the promissory note issued by the Debtors to the Prepetition Lender in connection therewith, the "**Prepetition Term Loan Note**"), plus accrued and unpaid interest, fees (including any prepayment fees), expenses, penalties, premiums and other obligations incurred in connection therewith, in each case in

12

accordance with the terms of the Prepetition Loan Documents, and (ii) Loan Agreement, dated as of March 29, 2024, relating to a revolving credit facility (the "**Prepetition Revolving Loan**" and together with the Prepetition Term Loan, collectively, the "**Prepetition Loans**") in the maximum principal amount of $7,000,000.00 (as has been or may be further amended, restated, supplemented or otherwise modified from time to time, the "**Prepetition RLOC Loan Agreement**", and the promissory note issued by the Debtors to the Prepetition Lender in connection therewith, the "**Prepetition Revolving Loan Note**", and together with the Prepetition Term Loan Agreement, the Prepetition Term Loan Note, the Prepetition RLOC Loan Agreement, and the other prepetition agreements and instruments entered into and executed in connection therewith, collectively, the "**Prepetition Loan Documents**"), plus accrued and unpaid interest, fees (including any prepayment fees), expenses, penalties, premiums and other obligations incurred in connection therewith, in each case in accordance with the terms of the Prepetition Loan Documents, among the Debtors, as borrowers, the Guarantors[4] (the Debtors, together with the Guarantors, the "**Prepetition Loan Parties**"), and AHF IC, LLC in its capacity as successor-by-assignment to Northwest Bank (the "**Prepetition Lender**"). All liabilities and other obligations of the Debtors arising under the Prepetition Loan Documents and applicable law and all other "Obligations" (as defined in the Prepetition Loan Documents) shall collectively be referred to herein as the "**Prepetition Obligations**", and are secured by first priority security interests in and liens on (the "**Prepetition Liens**") substantially all

---

[4] In connection with borrowing the Prepetition Loans, Ming Chen and Zhu Chen, who together own 100% of the equity of Wellmade Floor Coverings International, Inc., executed personal guaranties in favor of the Prepetition Lender.

ACTIVE 714056660v1

of the assets of the Prepetition Loan Parties, including Cash Collateral (as defined herein) (the "**Prepetition Collateral**").[5]

b.    <u>Non-avoidable Liens</u>.  The Prepetition Liens are valid, binding, perfected, non-avoidable, and enforceable liens on and security interests in the Prepetition Collateral, subject in each case, prior to giving effect to this Interim Order, to those other liens explicitly permitted by the applicable Prepetition Loan Documents (in each case, only to the extent such permitted exceptions were valid, properly perfected, non-avoidable liens senior in priority to the respective liens and security interests of the Prepetition Lender on the Petition Date) (the "**Permitted Priority Liens**"), if any.

c.    <u>Collateral</u>. For purposes of this Interim Order, the term "**Cash Collateral**" shall mean and include all "cash collateral" as defined in section 363 of the Bankruptcy Code in which the Prepetition Lender has a perfected lien, security interest or other interest, in each case whether existing on the Petition Date, arising pursuant to this Interim Order, or otherwise.  The Debtors stipulate that any and all of the Debtors' cash, cash equivalents, negotiable instruments, investment property, securities, and any amounts generated from the use, sale, lease or other disposition of the Prepetition Collateral, in each case wherever located, constitute Cash Collateral and Prepetition Collateral of the Prepetition Lender.

d.    <u>No other Liens</u>. To the Debtors' knowledge, as of the Petition Date, there were no other perfected liens on or security interests in the Prepetition Collateral except for the Prepetition Liens.

---

[5] The Prepetition Lender and the Borrowers are in the process of reconciling the outstanding amount of the Prepetition Obligations as of the Petition Date.  The Debtors reserve all rights on the amount of the Prepetition Obligations.

O.      The continued use of Cash Collateral has been negotiated in good faith and at arms' length among the Debtors, the Prepetition Lender, the DIP Lender, and, therefore, the use of the Cash Collateral by the Debtors in accordance with the terms of this Interim Order shall be deemed to have been extended, issued, or made in "good faith."

P.      In addition to the terms of the DIP Facility, the Debtors have an immediate and critical need to use Cash Collateral to continue the Debtors' ordinary course business operations and to maintain the value of the bankruptcy estates until the Final Hearing.  Based on the record presented to the Court at the Interim Hearing, the terms of use of the DIP Facility and Cash Collateral are fair and reasonable and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.  The Prepetition Lender shall consent to the Debtors entering into the DIP Agreement and using Cash Collateral on the terms and conditions provided for herein, including the granting of the Adequate Protection Liens and Adequate Protection Superpriority Claims (as defined herein).  For the interim period only, the adequate protection provided herein to the Prepetition Lender, as applicable, and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and are necessary to obtain the consent or non-objection of such parties.

Q.      Notice of the Motion and interim hearing was properly given by Debtors to (i) the Office of the United States Trustee for the Northern District of Georgia (the "**U.S. Trustee**"), (ii) those entities or individuals included on the Debtors' list of 30 largest unsecured creditors on a consolidated basis and (iii) counsel to the Prepetition Lender.  The notice and opportunity to object given by Debtors' emergency motion for a hearing before this Court on the Motion was appropriate, adequate, and satisfactory in the particular circumstances of this case.

ACTIVE 714056660v1

R.     For the reasons stated above, the Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2), 4001(c)(2), and the Local Rules.  Absent granting the relief set forth in this Interim Order, the Debtors' estates and their ability to successfully sell their assets or otherwise preserve the enterprise value of the Debtors' estates will be immediately and irreparably harmed.  Authorization of the use of the Cash Collateral in accordance with this Interim Order is therefore in the best interests of the Debtors' estates.

S.     The Debtors have prepared and delivered to the Prepetition Lender and DIP Lender a proposed budget (such initial budget, the "**Initial Budget**") for the period set forth therein (the "**Interim Budget Period**"), a copy of which is attached hereto as Exhibit "2".  The Initial Budget reflects the Debtors' anticipated net cash flow and anticipated disbursements on a weekly basis for the period from the Petition Date through and including November 3, 2025.  The Initial Budget is reasonable under the facts and circumstances.

**NOW, THEREFORE, based upon the foregoing findings of fact, it is hereby ORDERED, ADJUDGED AND DECREED**:

1.     The notice provided of the emergency relief sought in the Motion is adequate to comply with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.  The Debtors are granted the relief sought in the Motion and are authorized to incur the Interim DIP Financing from the DIP Lender upon the terms and conditions set forth in the DIP Agreement and this Order.

2.     The Debtors are expressly authorized to execute, deliver, perform and consummate all the terms and conditions set forth in the DIP Agreements and this Interim Order, and any and all other documents and instruments reasonably requested by the DIP Lender to execute,

16

effectuate, carry out, or consummate the terms and conditions of the DIP Financing and this Interim Order.

3.    The DIP Lender's security interest and lien upon the Collateral are granted pursuant to 11 U.S.C. § 364(d), and, subject to the Carve-Out, shall be a first priority secured claim, and a valid and perfected security interest in and lien upon the Collateral, in the amount of the Interim DIP Financing.  Payment of the Interim DIP Financing shall be secured by a valid and perfected security interest in and lien in and upon all of the Collateral with priority over any other existing or future lien, security interest or encumbrance upon such property and assets.   Any security interests or liens upon the Debtors' assets which are avoided by the Debtors or any subsequently appointed trustee and which are preserved by the estates shall be junior and subordinate to the security interest and lien in favor of the DIP Lender hereunder.

4.    The payment of the Interim DIP Financing and any claim asserted by the DIP Lender in this case for the repayment of the Interim DIP Financing, subject to the Carve-Out, shall be granted superpriority status pursuant to 11 U.S.C. § 364(c) and shall be prior and superior in right of payment to any other claim made or asserted against the Debtors and their estates, heretofore or hereafter arising or incurred in this case or any succeeding or superseding case under the Bankruptcy Code.

5.    Subject to the Carve-Out, no indebtedness or obligation of the Debtors of any kind or nature whatsoever shall be repayable or secured on parity with, or in any manner be senior to, the Interim DIP Financing.

6.    The security interests and liens in, on and to the Collateral granted by the Debtors to the DIP Lender pursuant to the DIP Agreement and this Interim Order shall be, and hereby are,

17

deemed effective, valid, and perfected as of the date of the closing of the Interim DIP Financing, without the necessity of the giving of any notice, the filing of any documents or other instruments or the taking of any action otherwise required to be given, filed or taken under applicable non-bankruptcy law for the perfection of security interests or mortgages, with such validity and perfection being binding upon any subsequently appointed trustee, either in this Chapter 11 case or a case under any other chapter of the Bankruptcy Code, and on any and all other creditors of the Debtors who have or may hereafter extend credit to the Debtors, or file a claim of any nature whatsoever, in this Chapter 11 case or any superseding bankruptcy cases of the Debtors. If the DIP Lender, in its sole discretion, choose to file such financing statements and otherwise confirm perfection of such security interests and liens, all such financing statements or similar instruments shall be deemed to have been filed or recorded at the time and on the date of entry of this Order and the automatic stay of 11 U.S.C. § 362 shall be deemed modified to permit any and all such filings without further order of the Court. Without limiting the foregoing, the Prepetition Lender, in its discretion, may file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Interim Order.

7.     If the Chapter 11 Cases are dismissed or converted, neither the entry of an interim or final order in the Bankruptcy Case approving the DIP Agreement nor the dismissal or conversion of the Chapter 11 Cases shall affect the rights or remedies of the DIP Lender under the DIP Agreement or this Interim Order. All rights and remedies under the DIP Agreement and this

18

Interim Order shall remain in full force and effect as if the Chapter 11 Cases had not been dismissed or converted. Until payment in full of the DIP Loan, it shall constitute an event of default under the DIP Agreement if the Debtors seek, or if there is entered, any order dismissing the Chapter 11 Cases.  If an order dismissing the Chapter 11 Cases is entered, (i) such order shall provide that subject to the rights of the superpriority lien of the DIP Lender, the DIP Loan Documents and DIP Facility shall continue in full force and effect and shall maintain its priority as provided in this Interim Order or and final order until payment in full of all the obligations due and owing the DIP Lender under the DIP Agreement; (ii) all superpriority liens of the DIP Lender shall remain binding on all parties in interest and rights granted to the DIP Lender under the DIP Agreement and this Interim Order and any Final Order and in any Interim Order or Final Order shall not be affected, and (iii) the Bankruptcy Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests under the DIP Agreement and in any Interim Order or Final Order.

8.      Subject to the terms and conditions contained in this Paragraph 8, each of the DIP Liens and DIP Security Interests, the superpriority claims, the Prepetition Liens and Security Interests, and the Adequate Protection Liens and Adequate Protection Superpriority Claims shall be subject and subordinate to payment of the Carve-Out (as defined below):

a.      Carve-Out. For purposes of this Interim Order, "**Carve-Out**" means (i) all unpaid fees required to be paid in these Chapter 11 Cases to the clerk of the Court (including any noticing agent appointed by the Court) and to the U.S. Trustee under 28 U.S.C. § 1930(a); (ii) all reasonable fees and expenses up to $10,000 incurred by a chapter 7 trustee and payable under section 726(b) of the Bankruptcy Code, and (iii) the unpaid

19

fees, costs, and disbursements of professionals retained by the Debtors in these Chapter 11 Cases and the Debtors' ordinary course professionals to the extent set forth in the Interim Budget.

b.      In the event the Debtors default under the terms of the DIP Agreement, this Interim Order, or any Final Order and fail to cure such default as prescribed in the DIP Agreement, specifically failing to respond to any notice of default filed on the dockets of the Chapter 11 Cases, the automatic stay provisions in § 362 of the Bankruptcy Code shall be vacated and modified as set forth in the DIP Agreement and this Interim Order including, without limitation, paragraph I(14) above.  Subject to paragraph I(14) above, the Debtors are further deemed to waive all rights to notice and hearing of any kind prior to the exercise by the DIP Lender of its rights to repossess the Collateral or to replevy, attach or levy upon such Collateral without prior notice or hearing.  The rights, remedies, powers and privileges conferred upon the DIP Lender pursuant to this Interim Order shall be in addition to and cumulative with those contained in the DIP Lender in the DIP Agreement, the DIP Loan Documents or created under applicable law.

9.      Subject to the terms hereof and in accordance with the Initial Budget, the Debtors are hereby authorized to use Cash Collateral for the Interim Budget Period as set forth in the Initial Budget.  In accordance with Bankruptcy Rule 4001(b)(2), the Debtors are authorized to use Cash Collateral pursuant to this Interim Order and the Initial Budget prior to entry of the Final Order, to avoid immediate and irreparable harm to the estates pending a Final Hearing on the Motion.

10.      The Debtors are only authorized to use Cash Collateral during the Interim Budget Period in a manner consistent with the Initial Budget; *provided that*, disbursements may occur

ACTIVE 714056660v1

earlier or later than the dates forecasted in the Initial Budget so long as such disbursements occur during the Interim Budget Period.  Cash Collateral shall be only used for the purposes permitted under the Initial Budget, including (i) to provide working capital needs of the Debtors and for general corporate purposes of the Debtors; and (ii) to make the payments or fund amounts otherwise permitted in this Interim Order and the Initial Budget. Notwithstanding the foregoing, disbursements by the Debtors for "Total Operating Disbursements" on an aggregate basis during the Interim Budget Period may not exceed the amounts specified in the Initial Budget by more than fifteen percent (15%).

11.     The Prepetition Lender is entitled, pursuant to sections 361, 362(d), and 363(e) of the Bankruptcy Code, to adequate protection of its interests in the Prepetition Collateral (including, without limitation, the Cash Collateral) on which the Prepetition Lender holds perfected security interests as of the Petition Date in an amount equal to the aggregate postpetition diminution in value of the Prepetition Collateral, including any Cash Collateral, from and after the Petition Date (such diminution in value, the "**Diminution in Value**"), including, without limitation, to the extent such diminution results from the sale, lease or use by the Debtors (or other decline in value) of the Prepetition Collateral, the subordination of the Prepetition Liens to the Carve-Out, or the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (such adequate protection, as set forth in the paragraphs below, the "**Adequate Protection Obligations**"). As adequate protection, the Prepetition Lender is hereby granted the following:

a.  ***Superpriority Claim***.  The Adequate Protection Obligations due to the Prepetition Lender shall constitute allowed joint and several superpriority claims against each of the Debtors as provided in Bankruptcy Code section 507(b) (collectively, the "**Adequate Protection Superpriority Claims**"), with priority over any and all administrative expenses and all other claims

21

against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all other administrative expenses of the kind specified in Bankruptcy Code sections 503(b) and 507(b), and over any and all other administrative expenses or other claims arising under any other provision of the Bankruptcy Code, including, without limitation, Bankruptcy Code sections 105, 326, 327, 328, 330, 331, 365, 503, 506, 507(a), 507(b), 546, 552, 726, 1113 or 1114, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy or attachment, subject and subordinate only to the Carve-Out and the DIP Liens and DIP Security Interests and the claims granted to the DIP Lender hereunder;

b.  ***Adequate Protection Liens***.  Subject to the Carve-Out and the DIP Liens and DIP Security Interests, as security for the Adequate Protection Obligations, effective as of the Petition Date and perfected without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession, control or further act by the Prepetition Lender of or with respect to any Postpetition Collateral (as defined below), the following security interests and liens are hereby granted to the Prepetition Lender (all such liens and security interests, the "**Adequate Protection Liens**"):

i.  Subject to the Carve-Out and the DIP Liens and DIP Security Interests, pursuant to Bankruptcy Code sections 361(2) and 363(c)(2), a valid, binding, continuing, enforceable, fully-perfected, non-avoidable additional and replacement first priority lien on, and security interest in, all property (including any previously unencumbered property, but excluding Avoidance Actions), whether now owned or hereafter acquired or existing and wherever located, of each Debtor and each Debtor's "estate" (as created pursuant to Bankruptcy Code section 541(a)), of any kind or nature whatsoever, real or personal, tangible or intangible, and now existing or hereafter acquired or created, including, without limitation, all cash, accounts, inventory, goods, contract rights, mineral rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, accounts receivable, receivables and receivables records, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, any owned real estate, real property leaseholds, fixtures, deposit accounts, commercial tort claims, securities accounts, instruments, investment property, letter-of-credit rights, supporting obligations, machinery and equipment, real property leases (and

22

proceeds from the disposition thereof), other equity or ownership interests held by a Debtor, including equity interests in subsidiaries and non-wholly-owned subsidiaries, money, investment property, Cash Collateral, and all cash and non-cash proceeds, rents, products, substitutions, accessions, and profits of any of the collateral described above, documents, vehicles, intellectual property, securities, partnership or membership interests in limited liability companies and capital stock, including, without limitation, the products, proceeds and supporting obligations thereof, whether in existence on the Petition Date or thereafter created, acquired, or arising and wherever located (all such property (including the Junior Collateral as defined herein), other than the Prepetition Collateral in existence immediately prior to the Petition Date, being collectively referred to as, the "**Postpetition Collateral**" and collectively with the Prepetition Collateral, the "**Collateral**"), which liens and security interests shall be senior to any and all other liens and security interests other than the DIP Liens and DIP Security Interests, Carve-Out, and the Permitted Priority Liens, if any (the "**Approved Liens**").

ii.  Subject to the DIP Liens and DIP Security Interests and the Carve-Out, pursuant to Bankruptcy Code sections 361(2) and 363(c)(2), a valid, binding, continuing, enforceable, fully-perfected non-avoidable junior priority replacement lien on, and security interest in, all property (excluding Avoidance Actions), whether now owned or hereafter acquired or existing and wherever located, of each Debtor and each Debtor's "estate" (as created pursuant to Bankruptcy Code section 541(a)), property of any kind or nature whatsoever, real or personal, tangible or intangible, and now existing or hereafter acquired or created, including, without limitation, all cash, accounts, inventory, goods, contract rights, mineral rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, accounts receivable, receivables and receivables records, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, contracts, owned real estate, real property leaseholds, fixtures, deposit accounts, commercial tort claims, securities accounts, instruments, investment property, letter-of-credit rights, supporting obligations, machinery and equipment, real property, leases (and proceeds from the disposition thereof), other equity or ownership interests held by a Debtor, including equity interests in subsidiaries and non-wholly-owned subsidiaries, money, investment property, Cash Collateral, and all cash and non-cash

ACTIVE 714056660v1

proceeds, rents, products, substitutions, accessions, and profits of any of the collateral described above, documents, vehicles, intellectual property, securities, partnership or membership interests in limited liability companies and capital stock, including, without limitation, the products, proceeds and supporting obligations thereof, whether now existing or hereafter acquired, that is subject only to (x) the DIP Liens and DIP Security Interests, (y) the Permitted Priority Liens, or (z) valid and non-avoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date to the extent permitted by Bankruptcy Code section 546(b), which valid, perfected and unavoidable liens are senior in priority to the security interests and liens in favor of the Prepetition Lender (the "**Junior Collateral**").

iii. Other than with respect to the DIP Liens and DIP Security Interests and the Carve-Out, the Adequate Protection Liens shall not be (1) subject or subordinate to, or *pari passu* with, (a) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under Bankruptcy Code section 551 or (b) any lien or security interest arising on or after the Petition Date, subject to the Carve-Out, or (2) except as otherwise set forth herein, subordinated to or made *pari passu* with any other lien, claim or security interest under Bankruptcy Code sections 363 or 364 or otherwise.

c. Subject to the terms and conditions contained in this paragraph, the prepetition security interests and liens of the Prepetition Lender, the Adequate Protection Liens and the Adequate Protection Superpriority Claims shall be subject and subordinate to the Carve-Out and the DIP Liens and DIP Security Interests and DIP Superpriority Claim.

12.    As additional adequate protection:

a.    Without limiting any rights of the Prepetition Lender under section 506(b) of the Bankruptcy Code, which rights are hereby preserved, and in consideration, and as a requirement for obtaining the consent of the Prepetition Lender to entry of this Interim Order and the Debtors' consensual use of Cash Collateral as provided herein, the Debtors shall promptly pay or reimburse, in full in cash, regular interest payments on the Prepetition

Obligations in accordance with the Prepetition Loan Documents, which shall continue to accrue at the default rate(s) set forth therein, whether or not budgeted in the Initial Budget, and without further notice, motion, or application to, order of, or hearing before, this Court, it being understood that all such interest shall be included as Adequate Protection Obligations owed by the Debtors to the Prepetition Lender.  Nothing herein shall be deemed a waiver of any claim by the Prepetition Lender for reimbursement of any prepetition or postpetition fees, expenses, or other amounts payable under the Prepetition Loan Documents, which claims are hereby preserved.

b.      The Prepetition Lender shall have the right to credit bid (x) up to the full amount of the Prepetition Obligations (including, without limitation, all accrued and unpaid interest, fees (including reasonable attorneys' fees), and expenses) under the Prepetition Loan Documents and (y) the Adequate Protection Superpriority Claims and any unpaid amounts due and owing under paragraph 6(a) hereof, as applicable, in the sale of any of the Collateral, including, without limitation, pursuant to (i) Bankruptcy Code section 363, (ii) a plan of reorganization or a plan of liquidation under Bankruptcy Code section 1129, or (iii) a sale or disposition by a chapter 7 trustee for any Debtor under Bankruptcy Code section 725.

13.      This Interim Order shall be sufficient and conclusive evidence of the validity, enforceability, perfection, priority and non-avoidability of the Adequate Protection Liens granted to the Prepetition Lender hereunder without the necessity of (a) filing or recording any financing statement, deed of trust, mortgage, control agreement, or other instrument or document which may otherwise be required under the law of any jurisdiction or (b) taking any other action to validate

25

or perfect these liens or to entitle the liens with the priorities granted herein.  Notwithstanding the foregoing, the Prepetition Lender may, in its sole discretion, enter into and file, as applicable, financing statements, mortgages, security agreements, notices of liens, and other similar instruments, agreements, or documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices, and other agreements or documents shall be deemed to have been filed or recorded as of the date of entry of this Interim Order.  The applicable Debtors are authorized to execute and deliver to the Prepetition Lender all such financing statements, mortgages, notices, and other documents as the Prepetition Lender may reasonably request to evidence and confirm the contemplated priority of the liens granted pursuant hereto.  Without limiting the foregoing, the Prepetition Lender, in its discretion, may file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Interim Order.

14.    This Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition Lender to request additional forms of adequate protection at any time or any party-in-interest's right to object thereto.

15.    The Debtors' rights to use Cash Collateral shall automatically terminate (the date of such termination, the "**Termination Date**"), without further notice or court proceeding, on the earliest to occur of (i) one business day after the Final Hearing Date (or, if consented to in writing by the Prepetition Lender acting in its sole discretion, such later date), if the Final Order (provided

26

that such Final Order has not been reversed, vacated, stayed, unless such stay has been vacated, or appealed, unless such appeal has been dismissed or otherwise finally resolved and affirms entry of the Final Order), which Final Order shall be consistent with this Interim Order or otherwise acceptable to the Prepetition Lender, in its sole discretion, has not been entered by this Court on or before such date; or (ii) November 2, 2025 (or, if consented to in writing by the Prepetition Lender acting in its sole discretion, such later date); or (iii) the occurrence of any events set forth in this paragraph 15(a) through (h) below, unless waived by the Prepetition Lender, in its sole discretion) (each of the following events, a "**Termination Event**" and collectively, the "**Termination Events**"):

      a.      on or before the date that is August 29, 2025, the Bidding Procedures Order shall not have been approved by order of the Court, in form and substance reasonably acceptable to the Prepetition Lender and DIP Lender;

      b.      on or before October 3, 2025, the Court shall not have entered a sale order approving one or more agreements for the sale of substantially all of the Debtors' assets (the "**Approved Sale(s)**"), which order and agreement(s) shall be in form and substance reasonably acceptable to the Prepetition Lender and DIP Lender (and, at a minimum, shall provide for proceeds sufficient to repay the Prepetition Obligations and DIP Obligations plus any accrued fees and interest with respect to same in cash at the closing of the Approved Sale(s));

      c.      the Approved Sale(s) shall not have been consummated by November 2, 2025;

27

d.      the Debtors' failure to: (i) use the Collateral, including without limitation Cash Collateral, in a manner consistent with the Initial Budget, or (ii) comply with any other covenant or agreement specified in this Interim Order; in each case where such failure shall have continued unremedied for three (3) business days following receipt of written notice by the Debtors from the Prepetition Lender of such failure;

e.      the date any provision of this Interim Order (or the Final Order, as applicable) shall for any reason cease to be valid and binding or any Debtor shall so assert in any pleading filed in any court;

f.      the date (i) any Chapter 11 Case shall be dismissed or converted to a case under chapter 7 of the Bankruptcy Code or any Debtor shall file a motion or other pleading seeking the dismissal or conversion of any Chapter 11 Case pursuant to Bankruptcy Code section 1112; or (ii) a trustee, responsible officer, or an examiner (other than a fee examiner) pursuant to Bankruptcy Code section 1104 is appointed or elected, as applicable, in any Chapter 11 Case, any Debtor applies for, consents to, or acquiesces in, any such appointment, or the Court shall have entered an order providing for such appointment, in each case without the prior written consent of the Prepetition Lender, in its sole discretion; or

g.      commencement of any action, including the filing of any pleading, by any Debtor against the Prepetition Lender with respect to any of the Prepetition Obligations or Prepetition Liens.

16.      <u>Effect of Stipulations</u>.

a.          The stipulations, releases and admissions contained in this Interim Order shall be binding upon the Debtors and any successor(s) thereto in all circumstances.  The stipulations, releases and admissions contained in this Interim Order, shall be binding upon all other parties in interest, including the Committee or any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors (a "**Trustee**"), unless and to the extent (a) the Committee or any other party in interest other than any Debtor (including any Trustee), in each case, after obtaining requisite standing, has duly filed an adversary proceeding challenging in whole or part the validity, enforceability, priority or extent of the Prepetition Obligations or the liens on the Prepetition Collateral securing the Prepetition Obligations held by or on behalf of the Prepetition Lender or otherwise asserting or prosecuting any Avoidance Actions, recharacterization, subordination, "lender liability", or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "**Claims and Defenses**") against the Prepetition Lender in connection with any matter related to the Prepetition Obligations, or the Prepetition Collateral or the Prepetition Liens by no later than the later of (i) in the case of any such adversary proceeding filed by the Committee or another party in interest with requisite standing, fifty (50) days after the Petition Date, and (ii) any such later date agreed to in writing by the Prepetition Lender, in its sole discretion (the time period established by the later of the foregoing clauses (i) and (ii), the "**Challenge Period**"), and (b) an order is entered by a court of competent jurisdiction and becomes final and non-appealable in favor of the plaintiff sustaining any such Claims and Defenses or other challenge or claim in any such duly filed adversary proceeding.  If no such adversary proceeding is timely filed prior to the expiration of the

29

Challenge Period by the Committee or a party in interest, in any case which has been granted the appropriate standing, without further order of this Court: (x) the Prepetition Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense, avoidance, contest, attack, objection, recoupment, reclassification, reduction, disallowance, recovery, disgorgement, attachment, "claim" (as defined in the Bankruptcy Code), impairment, subordination (whether equitable, contractual or otherwise) or other challenge of any kind pursuant to the Bankruptcy Code or applicable nonbankruptcy law, for all purposes in these Chapter 11 Cases and any subsequent chapter 7 cases; and (y) the Prepetition Obligations, and the Prepetition Lender's Prepetition Liens on the Prepetition Collateral shall not be subject to any other or further Claims and Defenses or other challenge and any party in interest shall be forever enjoined and barred from seeking to exercise the rights of the Debtors' estates or taking any such action, including any successor thereto (including any estate representative or a Trustee, whether such Trustee is appointed or elected prior to or following the expiration of the Challenge Period).  If any such adversary proceeding is timely filed by a party in interest with appropriate standing prior to the expiration of the Challenge Period, the stipulations and admissions contained in this Interim Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any Committee and any other Person, including any Trustee, except as to any such findings and admissions that were expressly and successfully challenged in such adversary proceeding.

30

b.      Nothing in this Interim Order vests or confers standing on the Committee or any other person, entity, or party-in-interest to assert any claim on behalf of any Debtor or any estate of any Debtor, or relieves the Committee or any other person, entity, or party-in-interest from any requirement under the Bankruptcy Code or otherwise to obtain standing and authorization from this Court prior to asserting any claim on behalf of any Debtor or any estate of any Debtor.

17.     Subject to the entry of a Final Order, except to the extent of the Carve-Out, no costs or expenses of administration of the Chapter 11 Cases, which have been or may be incurred in any of the Chapter 11 Cases at any time shall be charged against or recovered from the Prepetition Lender or DIP Lender, any of the Prepetition Obligations or DIP Obligations, or the Collateral pursuant to Bankruptcy Code sections 105(a) or 506(c), or otherwise, without the prior written consent of either the Prepetition Lender or DIP Lender in each of their sole discretions, and no such consent shall be implied from any other action, inaction, or acquiescence by any of the Prepetition Lender or DIP Lender or any of their representatives.

18.     The provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including the DIP Lender, Prepetition Lender, the Committee, the Debtors and their respective successors and assigns (including any Trustee hereinafter appointed or elected for the estates of any of the Debtors, an examiner appointed pursuant to Bankruptcy Code section 1104, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) as provided herein.  The protections afforded to the DIP Lender and the Prepetition Lender under this Interim Order and any actions taken pursuant thereto, shall survive the entry of

31

an order dismissing any or all of the Chapter 11 Cases or converting any or all of the Chapter 11 Cases into a case(s) under chapter 7 of the Bankruptcy Code, and the DIP Liens, Adequate Protection Liens and the Adequate Protection Superpriority Claims shall continue in the Chapter 11 Cases, in any such successor case(s) or after any such dismissal.  Except as otherwise provided herein, the DIP Liens, Adequate Protection Liens and the Adequate Protection Superpriority Claims shall maintain their priorities as provided in this Interim Order and the Final Order, and not be modified, altered or impaired in any way by any other financing, extension of credit, incurrence of indebtedness, or any conversion of any of the Chapter 11 Cases into a case(s) pursuant to chapter 7 of the Bankruptcy Code or dismissal of any of the Chapter 11 Cases, or by any other act or omission until the DIP Loan and the Prepetition Obligations are indefeasibly paid in full in cash.

19.     The automatic stay shall be modified or lifted to the extent necessary to allow the Prepetition Lender and DIP Lender to take any actions or to provide any notices to the Debtors, in each case, as contemplated by and in accordance with this Interim Order.

20.     Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution of effectiveness of this Interim Order as provided in such Rules. This Interim Order shall constitute findings of fact and conclusions of law, and the Debtors are authorized to take all actions necessary or appropriate to carry out the relief granted in this Interim Order. To the extent that any finding of fact shall be determined to be a conclusion of law it shall be so deemed and vice versa.

21.     The terms of this Interim Order shall remain in full force and effect notwithstanding any subsequently entered order of this Court, including but not limited to any order entered in connection with the Motion for further interim or final relief, unless explicitly modified by any subsequently entered order.

22.     The terms and conditions of this Interim Order shall be binding upon, and inure to the benefit of, the parties hereto, and their respective successors and assigns, including but not limited to any trustee appointed in this or any superseding bankruptcy case.

23.     In the event of any conflict in any of the terms or provisions of this Interim Order with any terms or provisions of the financing arrangements set forth in the DIP Agreement, the terms and provisions of this Interim Order shall prevail and be controlling as of the date of entry.

24.     The priority of the DIP Lender's liens and security interests granted under this Interim Order shall not be "primed" pursuant to 11 U.S.C. § 364(d), nor shall any of the DIP Lender's rights under this Interim Order be modified or affected by any plan of reorganization confirmed in this Chapter 11 case without the express written consent of the DIP Lender.

25.     Notwithstanding any provision of this Interim Order to the contrary, because the DIP Lender has agreed to fund the entire DIP Facility pursuant to this Interim Order, the continued effectiveness of this Interim Order and the DIP Lender's agreement to forbear from exercising remedies shall be expressly conditioned upon the entry of a Final Order that is, in all material respects, consistent with this Interim Order, or otherwise acceptable to the DIP Lender in its sole discretion, no later than August 31, 2025, or such later date as may be agreed in writing by the DIP Lender (the "**Final Order Deadline**"). If a Final Order is not entered on or before the Final Order Deadline, the DIP Lender may, subject to paragraph I(14) above:

(a) the DIP Lender may declare an immediate Event of Default under the DIP Agreement;

(b) the automatic stay shall be deemed vacated and modified solely to permit the DIP Lender to file a notice of termination and exercise all rights and remedies upon the filing of such notice on the docket of these Chapter 11 Cases (without further Court order), and the Debtors, Committee, and all other parties in interest may contest any such notice of termination.

(c) the Debtors shall be deemed to have waived any further right to use DIP proceeds or Cash Collateral;

(d) the DIP Lender shall be entitled to apply all proceeds in its possession to the DIP Obligations, and exercise all rights and remedies under the DIP Agreement, this Interim Order, and applicable law; and

(e) this Court shall retain exclusive jurisdiction to enforce the DIP Lender's rights and remedies arising from the failure to obtain entry of the Final Order.

26.     The Court shall hold a Final Hearing on the Motion at _____.m. on August 2___, 2025 in **Courtroom 1201, United States Courthouse, United States Bankruptcy, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303**, which must be attended in person for presentation of evidence and testimony and otherwise may be attended in person or via the Court's Virtual Hearing Room. You may join the Virtual Hearing Room through the "Dial-in and Virtual Bankruptcy Hearing Information" link at the top of the homepage of the Court's website, www.ganb.uscourts.gov, or the link on the judge's webpage, which can also be found on the Court's website. Please also review the "Hearing Information" tab on the judge's webpage for further information about the hearing. You should be prepared to appear at the hearing via video,

but you may leave your camera in the off position until the Court instructs otherwise. Unrepresented persons who do not have video capability may use the telephone dial-in information on the Court's webpage.

27.    This Court shall have and retain exclusive jurisdiction over the subject matter of this Order to resolve any dispute in connection with the rights and duties specified herein as a "core proceeding" under 28 U.S.C. § 157(b)(2).

28.    Notwithstanding anything to the contrary in this Interim Order, all rights of the Committee to contest entry of the Final Order are preserved on all grounds that exist prior to entry of this Interim Order.

###End of Order###

[*Signatures on following page*]

35

Prepared and presented by:

**GREENBERG TRAURIG, LLP**

*/s/ John D. Elrod*
John D. Elrod, GA Bar No. 246604
Jake Evans, GA Bar No. 797018
Allison J. McGregor, GA Bar No. 860865
3333 Piedmont Road NE, Suite 2500
Atlanta, GA 30305
Telephone: 678-553-2259
Facsimile: 678-553-2269
Email: elrodj@gtlaw.com
Jake.Evans@gtlaw.com
Allison.McGregor@gtlaw.com

*Proposed Counsel for the Debtors in Possession*

**Distribution List**

Wellmade Floor Coverings International, Inc.
1 Wellmade Drive
Cartersville, GA 30121

Greenberg Traurig, LLP
Terminus 200
3333 Piedmont Road, NE, Suite 2500
Atlanta, Georgia 30305
Attn: John D. Elrod

Kurtzman Carson Consultants LLC d/b/a Verita Global
222 N. Pacific Coast Highway, 3rd Floor
El Segundo, CA 90245
Attn: Drake D. Foster

Office of the United States Trustee
362 Richard Russell Federal Building
75 Ted Turner Drive, SW
Atlanta, GA 30303

37

**<u>Exhibit B</u>**

(Blackline)

ACTIVE 714033782

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| WELLMADE FLOOR COVERINGS INTERNATIONAL, INC. *et al.*,[1] | Case No. 25-58764-SMS |
| Debtors. | |

**SECOND INTERIM ORDER GRANTING EMERGENCY MOTION FOR (A) (1) AUTHORITY TO INCUR POST-PETITION SECURED INDEBTEDNESS, (2) AUTHORITY TO GRANT SUPERPRIORITY STATUS PURSUANT TO 11 U.S.C. § 364(c), (3) AUTHORITY TO GRANT PRIMING LIENS PURSUANT TO 11 U.S.C. § 364(d), (B) AUTHORIZING POSTPETITION USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION, (C) MODIFYING THE AUTOMATIC STAY, (D) SCHEDULING A FINAL HEARING, AND (E) GRANTING RELATED RELIEF**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Wellmade Industries MFR, N.A. LLC (1058) and Wellmade Floor Coverings International, Inc. (8425). The mailing address for the Debtors for purposes of these chapter 11 cases is: 1 Wellmade Drive, Cartersville, GA 30121.

This matter came before the Court on August 20, 2025 on an expedited basis on the Emergency Motion [Doc. No. 15] (the "**Motion**")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") seeking the entry of an interim order (the "**Interim Order**") and a final order (the "**Final Order**"), pursuant to §§ 105, 361, 362, 363, 364(c), 364(d), 507(b), and 552(b) of Title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rule 7007-1, 9013-1, 9013-2, and 9014-2 of the Local Rules of the United States Bankruptcy Court for the Northern District of Georgia (the "**Local Rules**") and *Second Amended and Restated General Order 26-2019, Procedures for Complex Chapter 11 Cases*, dated February 6, 2023 (the "Complex Case Procedures"): (1) authorizing the Debtors to obtain post-petition financing consisting of a superpriority secured multi-draw term loan credit facility in the aggregate amount not to exceed $4,000,000.00 (the "**DIP Facility**") under the *Senior Secured Debtor-in-Possession Loan and Security Agreement* (the "**DIP Agreement,**" attached hereto as Exhibit "1") between SummitBridge National Investments VIII LLC (the "**DIP Lender**") and the Debtors; (2) authorizing the Debtors to enter into the DIP Loan Documents (as defined in the DIP Agreement); (3) granting the DIP Lender superpriority administrative expense claims pursuant to 11 U.S.C. § 364(c), subject to the Carve-Out; (4) granting priming liens pursuant to 11 U.S.C. § 364(d) to the DIP Lender, subject to the Carve-Out; (5) authorizing the postpetition use of proceeds of the DIP Facility and Cash Collateral in accordance with the Initial Budget (as defined herein); (6) granting adequate

---

[2] Capitalized terms used, but not defined, herein shall have the meaning ascribed to such terms in the Motion or DIP Agreement, as applicable.

ACTIVE 714056660v1

protection on account of the diminution in the value of the Prepetition Collateral (as defined herein) as a consequence of the Debtors' use, sale or lease of the Prepetition Collateral, including any Cash Collateral (as defined herein); (7) subject to entry of the Final Order (as defined herein) and to the extent set forth herein, waiving the Debtors' right to surcharge the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code; (8) modifying the automatic stay to the extent necessary to implement and effectuate the terms of this Interim Order; (9) scheduling a final hearing on the Motion (a "**Final Hearing**") pursuant to Bankruptcy Rule 4001; (10) waiving any applicable stay with respect to the effectiveness and enforceability of this Interim Order (including a waiver pursuant to Bankruptcy Rule 6004(h)); and (11) granting related relief, all as more fully set forth in the Motion.

The Court has considered the Motion, the presentation of counsel at the hearing, and the entire record and has determined that approval of the relief requested in the Motion is necessary to avoid immediate and irreparable harm to Debtors and their estates and is fair and reasonable and in the best interest of the Debtors, their estates, and all parties in interest, and is essential for the preservation and continued operation of the Debtors' business and the maximization of the value of Debtors' assets; and it appearing that the Debtors' entry into the DIP Loan Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and for good and sufficient cause appearing therefore, hereby finds and determines as follows:[3]

---

[3] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any findings of fact constitute conclusions of law, they are adopted as such, and *vice versa*.

ACTIVE 714056660v1

A.      On August 4, 2025 (the "**Petition Date**"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Northern District of Georgia (this "**Court**").  The Debtors have continued to manage and operate their businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  **On August 14, 2025, the Office of the United States Trustee appointed a statutory committee of unsecured creditors (the "Committee") in the Chapter 11 Cases.**  As of the date hereof, no ~~statutory committee of unsecured creditors (if such committee is appointed, the "Committee"),~~ trustee~~,~~ or examiner has been appointed in the Chapter 11 Cases.  On August 4, 2025, this Court entered an order directing joint administration of the Chapter 11 Cases.

B.      This Court has core jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue for the Chapter 11 Cases and proceedings on the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 507(b), and 552(b) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, Local Rules 7007-1, 9013-1, 9013-4, and 9014-2, and Section G of the Complex Case Procedures.

C.      The Debtors' current liquidity is insufficient to fund the costs of administration of these Chapter 11 Cases and the Debtors' expenses in the ordinary course of their business operations.  Despite their efforts, the Debtors have been unable to find another entity willing to provide financing upon terms as favorable as the DIP Lender proposes.  The Debtors are unable

to obtain unsecured credit. The Debtors also are unable to obtain secured credit allowable under § 364(c) of the Bankruptcy Code without granting priming liens under § 364(d)(1) of the Bankruptcy Code and superpriority claims under the terms and conditions set forth in this Interim Order and in the DIP Agreement. The Debtors believe that the DIP Financing (as defined herein) under the terms of the DIP Agreement will be made upon terms at least as favorable as any other financing it can obtain.

D.      The Debtors have requested that (i) the Prepetition Lender agree to the Debtors entering into the DIP Agreement in accordance with the terms set forth herein and permit the Debtors to use the Prepetition Lender's Cash Collateral in accordance with the terms set forth herein, and (ii) the DIP Lender enter into the DIP Facility under which the Debtors may obtain loans from the DIP Lender through multi-draws in an aggregate principal amount not to exceed $4,000,000 (the "**DIP Loan**"). The DIP Lender is willing to establish the DIP Facility upon the terms and conditions set forth in the DIP Agreement and the Final Order up to the amount of $4,000,000, inclusive of the First DIP Draw (as defined below) approved by this Interim Order.

E.      The "**Interim DIP Financing**" consists of a One Hundred Twenty Thousand Dollar ($120,000.00) draw by the Debtors under the DIP Agreement upon entry of this Interim Order (the "**First DIP Draw**") and the second and final draw of three million eight hundred eighty thousand dollars ($3,880,000) (the "**Final DIP Draw,**" together with the First DIP Draw, the "**DIP Draws**") under the conditions delineated in paragraph I(2).

F.      On August 7, 2025, the Court entered the *Interim Order Granting Emergency Motion for (A) (1) Authority to Incur Post-Petition Secured Indebtedness, (2) Authority to Grant*

*Superpriority Status Pursuant to 11 U.S.C. § 364(c), (3) Authority to Grant Priming Liens Pursuant to 11 U.S.C. § 364(d), (B) Authorizing Postpetition Use of Cash Collateral and Granting Adequate Protection, (C) Modifying the Automatic Stay, (D) Scheduling a Final Hearing, and (E) Granting Related Relief* [Docket No. 30].

G.      The DIP Lender's willingness to establish the DIP Facility and to fund the DIP Loan, including the DIP Draws,  is conditioned upon the Debtors' satisfaction of all conditions precedent and certain milestones as set forth in Sections 2 and 7 of the DIP Agreement (the "**Conditions and Milestones**") and (i) the Debtors obtaining Court approval to enter into the DIP Agreement (and all documents related to the DIP Agreement) and to incur all obligations of the Debtors thereunder; (ii) the DIP Lender being granted as security for the prompt payment and performance of all obligations under the DIP Agreement (the "**DIP Obligations**," as defined below), first priority, perfected security interests in and priming liens in the Collateral (as defined in paragraph 11(b)(i) of this Interim Order).

H.      Upon the Debtors' receipt of the First DIP Draw, the Debtors shall become borrowers under the DIP Agreement and DIP Loan Documents.

I.      Prior to the Petition Date, the DIP Lender received a One Hundred Fifty Thousand Dollar ($150,000.00) nonrefundable expense deposit under the terms of the DIP Agreement (the "**Expense Deposit**").  The DIP Agreement provides for the DIP Lender to receive a break-up fee in the event that a third-party lender provides the Debtors with an alternative debtor in possession facility that is approved by a final DIP order, the DIP Lender shall be entitled to a break-up fee of One-Hundred Twenty Thousand Dollars ($120,000.00) which shall be deemed to

be earned upon entry of any such final DIP order and shall be an administrative expense in the Bankruptcy Case. After application of the Expense Deposit to the DIP Lender's reasonable transaction costs and legal fees, the DIP Lender shall apply the amount remaining in its Expense Deposit to the Break-Up Fee. If the amount remaining in the Expense Deposit is not sufficient to cover the entire Break-Up Fee, the remaining amount of the Break-Up Fee shall be paid from the loan proceeds of the alternative DIP facility or from the Debtors' cash on hand.

J.    The material terms of the DIP Agreement for repayment of the DIP Loan are:

(1)    Upon entry of this Interim Order and the Debtors' compliance with the Conditions and Milestones, the DIP Lender shall be authorized to fund the First DIP Draw to be applied to the DIP Lender's Underwriting Fee and Origination Fee, both of which are defined in the DIP Agreement.

(2)    The Final Draw was funded upon the Debtors' designation of a Stalking Horse Bid.

(3)    The DIP Draws (also known as the "**DIP Financing**") shall be used by the Debtors solely for the purposes set forth in the DIP Agreement, including to pay expenses subject to the Budget, as it may at any time be amended, supplemented, updated or extended with the prior written consent of the DIP Lender.

(4)    The Debtors shall execute and deliver such other agreements and documents as the DIP Lender shall reasonably require in connection with the DIP Financing. The DIP Financing shall become an obligation of the Debtors concurrently with their receipt of funding pursuant to the DIP Agreement. The DIP Loan shall be

7

secured by duly perfected DIP Liens and DIP Security Interests (as defined in paragraph 9 below) in favor of the DIP Lender in the Collateral.  The DIP Lender is willing to advance the DIP Financing upon the terms and conditions set forth herein and in the DIP Agreement.

(5)    The DIP Financing balance shall bear interest at the rate of twelve percent (12%) per annum on an actual/360 day basis and be payable in arrears (the "**Interest Rate**") as set forth in the DIP Agreement.  The interest payments shall be paid on the first business day of each calendar month (the "**Interest Payments**").  The DIP Lender shall credit the Interest Payments each month from an interest payment reserve which shall be a segregated funding account established for the sole benefit of DIP Lender to fund the Interest Payments (the "**Interest Payment Reserve**").

(6)    The limit for the DIP Financing shall be up to Four Million Dollars ($4,000,000.00).

(7)    The "**DIP Obligations**" shall include all indebtedness, liabilities, obligations, covenants and duties now or at any time or times hereafter owing by the Debtors to DIP Lender pursuant to or in connection with the DIP Agreement, this Interim Order and any Final Order, or any other DIP Loan Document including all principal, interest, fees (including, but not limited to, the Origination Fee, any Extension Fee, the Underwriting Fee, and the Exit Fee), indemnification, and reimbursement payments, costs, and expenses (including all reasonable fees and expenses of counsel to DIP Lender).

8

(8)    The DIP Lender shall be entitled to conduct periodic field exams upon reasonable notice to the Debtors.

(9)    The Debtors' obligation to repay the DIP Obligations shall be secured by a security interest in, and lien upon, all of the Debtors' Collateral (the "**DIP Liens and DIP Security Interests**"), excluding avoidance actions under chapter 5 of the Bankruptcy Code and state law (collectively, "**Avoidance Actions**").  The DIP Obligations and DIP Liens and DIP Security Interests shall be an allowed first priority secured claim, under Bankruptcy Code § 364(d), fully payable before any other secured claim, and a superpriority claim under Bankruptcy Code § 364(c) (the "**DIP Superpriority Claim**"), prior to and superior in right of payment of any other claim against the Debtors or their estates, heretofore or hereafter arising or incurred in this case or any succeeding or superseding case under the Bankruptcy Code.

(10)    Each of the terms and conditions of the DIP Financing contained in the DIP Agreement are incorporated herein by this reference, except, to the extent the Interim Order differs from the DIP Agreement, the Interim Order shall control.

(11)    The DIP Liens and DIP Security Interests shall be deemed effective, valid, and perfected as of the date of the entry of the Interim Order, without the necessity of the giving of any notice, the filing of any documents or other instruments or the taking of any action otherwise required to be given, filed or taken under applicable non-bankruptcy law for the perfection of security interests or mortgages, with such validity and perfection being binding upon any subsequently appointed trustee, either in this Chapter 11 case or a

9

case under any other chapter of the Bankruptcy Code, and on any and all other creditors of the Debtors who have or may hereafter extend credit to the Debtors, or file a claim of any nature whatsoever, in this Chapter 11 case or any superseding bankruptcy case of the Debtors. If the DIP Lender shall, in its sole discretion, choose to file such financing statements and otherwise confirm perfection of such security interests and liens, all such financing statements or similar instruments shall be deemed to have been filed or recorded at the time and on the date of entry of the Interim Order and the automatic stay of 11 U.S.C. § 362 shall be deemed modified to permit any and all such filings without further order of the Court.

(12)  The priority of the DIP Liens and DIP Security Interests and the DIP Superiority Claim granted under the Interim Order shall not be "primed" pursuant to 11 U.S.C. § 364(d), nor shall any of the DIP Lender's rights under the Interim Order be modified or affected by any plan of reorganization confirmed in this Chapter 11 case without the express written consent of the DIP Lender.

(13)  Subject to the Carve-Out, no indebtedness or obligation of the Debtors of any kind or nature whatsoever (other than future obligations to the DIP Lender) shall be repayable or secured on a parity with, or in any manner be prior to the DIP Obligations. Moreover, any security interests or liens upon any of the Debtors' assets which, after taking into account the provisions of this Interim Order, may be avoided by the Debtors or any subsequently appointed trustee and which are preserved by the estate shall be junior and subordinate to the DIP Liens and DIP Security Interests.

10

(14)  In the event the Debtors default under the terms of the DIP Agreement or this Interim Order and Debtors fail to cure such default within five (5) business days from the date of written notice of the default pursuant to the terms of the DIP Agreement,  and if the Debtors fail to do so, the DIP Lender may file a notice of default on the dockets of the Chapter 11 Cases (the "**Default Declaration**").  The Default Declaration shall be served via electronic mail on the following (a) Proposed Counsel for the Debtors, John D. Elrod (elrodj@gtlaw.com) and Allison McGregor (Allison.McGregor@gtlaw.com); (b) counsel for AHF IC, LLC, Austin Jowers (AJowers@KSLAW.com) and Christopher Coleman (Christopher.Coleman@kslaw.com); the Office of the United States Trustee, c/o Lindsay  Kolba (Lindsay.P.Kolba@usdoj.gov) and counsel to the Committee **(if any)**. If Debtors or any other party in interest fail to respond to the Default Declaration within three (3) business days, the automatic stay provisions in § 362 of the Bankruptcy Code shall be vacated and modified as set forth in the DIP Agreement and this Interim Order. The Debtors are further deemed to waive all rights to notice and hearing of any kind prior to the exercise by the DIP Lender of its rights to repossess the Collateral or to replevy, attach or levy upon such Collateral without prior notice or hearing.  The rights, remedies, powers and privileges conferred upon the DIP Lender pursuant to this Interim Order shall be in addition to and cumulative with those contained in the DIP Lender in the DIP Agreement, the DIP Loan Documents or created under applicable law.

K.      The Debtors have made diligent inquiry to find other sources of funding to support Debtors' post-petition financial needs. The Debtors believe that the terms and conditions

11

of the proposed borrowing from the DIP Lender, as laid out in the DIP Agreement, as modified herein, are fair and reasonable, were negotiated by the parties in good faith, and are the best available terms to the Debtors under the present market conditions and financial circumstances of the Debtors.  The Debtors are unable to obtain unsecured credit or credit that is not secured by a senior lien on the Collateral as described herein. The proposed Interim Draw, upon the terms and conditions set forth in the DIP Agreement and this Interim Order, is essential and necessary for the preservation and maintenance of the Debtors' estates

L.      It is in the best interests of the Debtors, their estates and their creditors that Debtors be given the authority to consummate, and that this Court approve and order the consummation by Debtors, of the Interim Draw, and to execute and deliver any and all other documents and instruments reasonably requested by the DIP Lender to execute, effectuate, carry out, or consummate the terms and conditions of the Interim Draw as set forth in the DIP Agreement and this Interim Order.

M.      The DIP Lender is acting in good faith in offering to provide the DIP Facility to Debtors on the terms described herein and in the DIP Agreement.

N.      Without prejudice to the rights of the Committee and other parties in interest to bring any Claims and Defenses during the Challenge Period (each as defined below), the Debtors admit, stipulate, acknowledge, and agree (and this Paragraph C hereof shall be referred to herein collectively as the "**Debtors' Stipulations**") as follows:

a.      Prepetition Obligations.  As of the Petition Date, all of the Debtors were unconditionally indebted and liable to the Prepetition Lender (as defined herein), without

12

defense, counterclaim or offset of any kind, for the following: all debts, liabilities and obligations of every kind and nature owed by the Debtors under the Prepetition Loan Documents (as defined herein), including, without limitation pursuant to that certain (i) Loan Agreement, dated as of March 29, 2024, related to a term loan (the "**Prepetition Term Loan**") in the original principal amount of $20,000,0000 (as has been or may be further amended, restated, supplemented or otherwise modified from time to time, the "**Prepetition Term Loan Agreement**" and the promissory note issued by the Debtors to the Prepetition Lender in connection therewith, the "**Prepetition Term Loan Note**"), plus accrued and unpaid interest, fees (including any prepayment fees), expenses, penalties, premiums and other obligations incurred in connection therewith, in each case in accordance with the terms of the Prepetition Loan Documents, and (ii) Loan Agreement, dated as of March 29, 2024, relating to a revolving credit facility (the "**Prepetition Revolving Loan**" and together with the Prepetition Term Loan, collectively, the "**Prepetition Loans**") in the maximum principal amount of $7,000,000.00 (as has been or may be further amended, restated, supplemented or otherwise modified from time to time, the "**Prepetition RLOC Loan Agreement**", and the promissory note issued by the Debtors to the Prepetition Lender in connection therewith, the "**Prepetition Revolving Loan Note**", and together with the Prepetition Term Loan Agreement, the Prepetition Term Loan Note, the Prepetition RLOC Loan Agreement, and the other prepetition agreements and instruments entered into and executed in connection therewith, collectively, the "**Prepetition Loan Documents**"),

plus accrued and unpaid interest, fees (including any prepayment fees), expenses, penalties, premiums and other obligations incurred in connection therewith, in each case in accordance with the terms of the Prepetition Loan Documents, among the Debtors, as borrowers, the Guarantors[4] (the Debtors, together with the Guarantors, the "**Prepetition Loan Parties**"), and AHF IC, LLC in its capacity as successor-by-assignment to Northwest Bank (the "**Prepetition Lender**"). All liabilities and other obligations of the Debtors arising under the Prepetition Loan Documents and applicable law and all other "Obligations" (as defined in the Prepetition Loan Documents) shall collectively be referred to herein as the "**Prepetition Obligations**", and are secured by first priority security interests in and liens on (the "**Prepetition Liens**") substantially all of the assets of the Prepetition Loan Parties, including Cash Collateral (as defined herein) (the "**Prepetition Collateral**").[5]

b. <u>Non-avoidable Liens</u>. The Prepetition Liens are valid, binding, perfected, non-avoidable, and enforceable liens on and security interests in the Prepetition Collateral, subject in each case, prior to giving effect to this Interim Order, to those other liens explicitly permitted by the applicable Prepetition Loan Documents (in each case, only to the extent such permitted exceptions were valid, properly perfected,

---

[4] In connection with borrowing the Prepetition Loans, Ming Chen and Zhu Chen, who together own 100% of the equity of Wellmade Floor Coverings International, Inc., executed personal guaranties in favor of the Prepetition Lender.

[5] The Prepetition Lender and the Borrowers are in the process of reconciling the outstanding amount of the Prepetition Obligations as of the Petition Date. The Debtors reserve all rights on the amount of the Prepetition Obligations.

non-avoidable liens senior in priority to the respective liens and security interests of the Prepetition Lender on the Petition Date) (the "**Permitted Priority Liens**"), if any.

       c.      <u>Collateral</u>. For purposes of this Interim Order, the term "**Cash Collateral**" shall mean and include all "cash collateral" as defined in section 363 of the Bankruptcy Code in which the Prepetition Lender has a perfected lien, security interest or other interest, in each case whether existing on the Petition Date, arising pursuant to this Interim Order, or otherwise. The Debtors stipulate that any and all of the Debtors' cash, cash equivalents, negotiable instruments, investment property, securities, and any amounts generated from the use, sale, lease or other disposition of the Prepetition Collateral, in each case wherever located, constitute Cash Collateral and Prepetition Collateral of the Prepetition Lender.

       d.      <u>No other Liens</u>. To the Debtors' knowledge, as of the Petition Date, there were no other perfected liens on or security interests in the Prepetition Collateral except for the Prepetition Liens.

       O.      The continued use of Cash Collateral has been negotiated in good faith and at arms' length among the Debtors, the Prepetition Lender, the DIP Lender, and, therefore, the use of the Cash Collateral by the Debtors in accordance with the terms of this Interim Order shall be deemed to have been extended, issued, or made in "good faith."

       P.      In addition to the terms of the DIP Facility, the Debtors have an immediate and critical need to use Cash Collateral to continue the Debtors' ordinary course business operations and to maintain the value of the bankruptcy estates until the Final Hearing. Based on the record

ACTIVE 714056660v1

presented to the Court at the Interim Hearing, the terms of use of the DIP Facility and Cash Collateral are fair and reasonable and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties. The Prepetition Lender shall consent to the Debtors entering into the DIP Agreement and using Cash Collateral on the terms and conditions provided for herein, including the granting of the Adequate Protection Liens and Adequate Protection Superpriority Claims (as defined herein). For the interim period only, the adequate protection provided herein to the Prepetition Lender, as applicable, and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and are necessary to obtain the consent or non-objection of such parties.

Q. Notice of the Motion and interim hearing was properly given by Debtors to (i) the Office of the United States Trustee for the Northern District of Georgia (the "**U.S. Trustee**"), (ii) those entities or individuals included on the Debtors' list of 30 largest unsecured creditors on a consolidated basis and (iii) counsel to the Prepetition Lender. The notice and opportunity to object given by Debtors' emergency motion for a hearing before this Court on the Motion was appropriate, adequate, and satisfactory in the particular circumstances of this case.

R. For the reasons stated above, the Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2), 4001(c)(2), and the Local Rules. Absent granting the relief set forth in this Interim Order, the Debtors' estates and their ability to successfully sell their assets or otherwise preserve the enterprise value of the Debtors' estates will be immediately and irreparably harmed. Authorization of the use of the Cash Collateral in accordance with this Interim Order is therefore in the best interests of the Debtors' estates.

ACTIVE 714056660v1

S.    The Debtors have prepared and delivered to the Prepetition Lender and DIP Lender a proposed budget (such initial budget, the "**Initial Budget**") for the period set forth therein (the "**Interim Budget Period**"), a copy of which is attached hereto as Exhibit "2".  The Initial Budget reflects the Debtors' anticipated net cash flow and anticipated disbursements on a weekly basis for the period from the Petition Date through and including November 3, 2025. The Initial Budget is reasonable under the facts and circumstances.

**NOW, THEREFORE**, **based upon the foregoing findings of fact, it is hereby ORDERED, ADJUDGED AND DECREED**:

1.    The notice provided of the emergency relief sought in the Motion is adequate to comply with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.  The Debtors are granted the relief sought in the Motion and are authorized to incur the Interim DIP Financing from the DIP Lender upon the terms and conditions set forth in the DIP Agreement and this Order.

2.    The Debtors are expressly authorized to execute, deliver, perform and consummate all the terms and conditions set forth in the DIP Agreements and this Interim Order, and any and all other documents and instruments reasonably requested by the DIP Lender to execute, effectuate, carry out, or consummate the terms and conditions of the DIP Financing and this Interim Order.

3.    The DIP Lender's security interest and lien upon the Collateral are granted pursuant to 11 U.S.C. § 364(d), and, subject to the Carve-Out, shall be a first priority secured claim, and a valid and perfected security interest in and lien upon the Collateral, in the amount of

17

the Interim DIP Financing.  Payment of the Interim DIP Financing shall be secured by a valid and perfected security interest in and lien in and upon all of the Collateral with priority over any other existing or future lien, security interest or encumbrance upon such property and assets. Any security interests or liens upon the Debtors' assets which are avoided by the Debtors or any subsequently appointed trustee and which are preserved by the estates shall be junior and subordinate to the security interest and lien in favor of the DIP Lender hereunder.

4.      The payment of the Interim DIP Financing and any claim asserted by the DIP Lender in this case for the repayment of the Interim DIP Financing, subject to the Carve-Out, shall be granted superpriority status pursuant to 11 U.S.C. § 364(c) and shall be prior and superior in right of payment to any other claim made or asserted against the Debtors and their estates, heretofore or hereafter arising or incurred in this case or any succeeding or superseding case under the Bankruptcy Code.

5.      Subject to the Carve-Out, no indebtedness or obligation of the Debtors of any kind or nature whatsoever shall be repayable or secured on parity with, or in any manner be senior to, the Interim DIP Financing.

6.      The security interests and liens in, on and to the Collateral granted by the Debtors to the DIP Lender pursuant to the DIP Agreement and this Interim Order shall be, and hereby are, deemed effective, valid, and perfected as of the date of the closing of the Interim DIP Financing, without the necessity of the giving of any notice, the filing of any documents or other instruments or the taking of any action otherwise required to be given, filed or taken under applicable non-bankruptcy law for the perfection of security interests or mortgages, with such

18

validity and perfection being binding upon any subsequently appointed trustee, either in this Chapter 11 case or a case under any other chapter of the Bankruptcy Code, and on any and all other creditors of the Debtors who have or may hereafter extend credit to the Debtors, or file a claim of any nature whatsoever, in this Chapter 11 case or any superseding bankruptcy cases of the Debtors.  If the DIP Lender, in its sole discretion, choose to file such financing statements and otherwise confirm perfection of such security interests and liens, all such financing statements or similar instruments shall be deemed to have been filed or recorded at the time and on the date of entry of this Order and the automatic stay of 11 U.S.C. § 362 shall be deemed modified to permit any and all such filings without further order of the Court.  Without limiting the foregoing, the Prepetition Lender, in its discretion, may file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Interim Order.

7.      If the Chapter 11 Cases are dismissed or converted, neither the entry of an interim or final order in the Bankruptcy Case approving the DIP Agreement nor the dismissal or conversion of the Chapter 11 Cases shall affect the rights or remedies of the DIP Lender under the DIP Agreement or this Interim Order. All rights and remedies under the DIP Agreement and this Interim Order shall remain in full force and effect as if the Chapter 11 Cases had not been dismissed or converted. Until payment in full of the DIP Loan, it shall constitute an event of default under the DIP Agreement if the Debtors seek, or if there is entered, any order dismissing

ACTIVE 714056660v1

the Chapter 11 Cases.  If an order dismissing the Chapter 11 Cases is entered, (i) such order shall provide that subject to the rights of the superpriority lien of the DIP Lender, the DIP Loan Documents and DIP Facility shall continue in full force and effect and shall maintain its priority as provided in this Interim Order or and final order until payment in full of all the obligations due and owing the DIP Lender under the DIP Agreement; (ii) all superpriority liens of the DIP Lender shall remain binding on all parties in interest and rights granted to the DIP Lender under the DIP Agreement and this Interim Order and any Final Order and in any Interim Order or Final Order shall not be affected, and (iii) the Bankruptcy Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests under the DIP Agreement and in any Interim Order or Final Order.

8.      Subject to the terms and conditions contained in this Paragraph 8, each of the DIP Liens and DIP Security Interests, the superpriority claims, the Prepetition Liens and Security Interests, and the Adequate Protection Liens and Adequate Protection Superpriority Claims shall be subject and subordinate to payment of the Carve-Out (as defined below):

a.      Carve-Out. For purposes of this Interim Order, "**Carve-Out**" means (i) all unpaid fees required to be paid in these Chapter 11 Cases to the clerk of the Court (including any noticing agent appointed by the Court) and to the U.S. Trustee under 28 U.S.C. § 1930(a); (ii) all reasonable fees and expenses up to $10,000 incurred by a chapter 7 trustee and payable under section 726(b) of the Bankruptcy Code, and (iii) the unpaid fees, costs, and disbursements of professionals retained by the Debtors in these

Chapter 11 Cases and the Debtors' ordinary course professionals to the extent set forth in the Interim Budget.

b.      In the event the Debtors default under the terms of the DIP Agreement, this Interim Order, or any Final Order and fail to cure such default as prescribed in the DIP Agreement, specifically failing to respond to any notice of default filed on the dockets of the Chapter 11 Cases, the automatic stay provisions in § 362 of the Bankruptcy Code shall be vacated and modified as set forth in the DIP Agreement and this Interim Order including, without limitation, paragraph JI(14) above.  Subject to paragraph JI(14) above, the Debtors are further deemed to waive all rights to notice and hearing of any kind prior to the exercise by the DIP Lender of its rights to repossess the Collateral or to replevy, attach or levy upon such Collateral without prior notice or hearing.  The rights, remedies, powers and privileges conferred upon the DIP Lender pursuant to this Interim Order shall be in addition to and cumulative with those contained in the DIP Lender in the DIP Agreement, the DIP Loan Documents or created under applicable law.

9.      Subject to the terms hereof and in accordance with the Initial Budget, the Debtors are hereby authorized to use Cash Collateral for the Interim Budget Period as set forth in the Initial Budget.  In accordance with Bankruptcy Rule 4001(b)(2), the Debtors are authorized to use Cash Collateral pursuant to this Interim Order and the Initial Budget prior to entry of the Final Order, to avoid immediate and irreparable harm to the estates pending a Final Hearing on the Motion.

21

10.     The Debtors are only authorized to use Cash Collateral during the Interim Budget
Period in a manner consistent with the Initial Budget; *provided that*, disbursements may occur
earlier or later than the dates forecasted in the Initial Budget so long as such disbursements occur
during the Interim Budget Period.  Cash Collateral shall be only used for the purposes permitted
under the Initial Budget, including (i) to provide working capital needs of the Debtors and for
general corporate purposes of the Debtors; and (ii) to make the payments or fund amounts
otherwise permitted in this Interim Order and the Initial Budget. Notwithstanding the foregoing,
disbursements by the Debtors for "Total Operating Disbursements" on an aggregate basis during
the Interim Budget Period may not exceed the amounts specified in the Initial Budget by more
than fifteen percent (15%).

11.     The Prepetition Lender is entitled, pursuant to sections 361, 362(d), and 363(e) of
the Bankruptcy Code, to adequate protection of its interests in the Prepetition Collateral
(including, without limitation, the Cash Collateral) on which the Prepetition Lender holds
perfected security interests as of the Petition Date in an amount equal to the aggregate
postpetition diminution in value of the Prepetition Collateral, including any Cash Collateral,
from and after the Petition Date (such diminution in value, the "**Diminution in Value**"),
including, without limitation, to the extent such diminution results from the sale, lease or use by
the Debtors (or other decline in value) of the Prepetition Collateral, the subordination of the
Prepetition Liens to the Carve-Out, or the imposition of the automatic stay pursuant to section
362 of the Bankruptcy Code (such adequate protection, as set forth in the paragraphs below, the

22

"**Adequate Protection Obligations**"). As adequate protection, the Prepetition Lender is hereby

granted the following:

a. ***Superpriority Claim***.  The Adequate Protection Obligations due to the Prepetition Lender shall constitute allowed joint and several superpriority claims against each of the Debtors as provided in Bankruptcy Code section 507(b) (collectively, the "**Adequate Protection Superpriority Claims**"), with priority over any and all administrative expenses and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all other administrative expenses of the kind specified in Bankruptcy Code sections 503(b) and 507(b), and over any and all other administrative expenses or other claims arising under any other provision of the Bankruptcy Code, including, without limitation, Bankruptcy Code sections 105, 326, 327, 328, 330, 331, 365, 503, 506, 507(a), 507(b), 546, 552, 726, 1113 or 1114, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy or attachment, subject and subordinate only to the Carve-Out and the DIP Liens and DIP Security Interests and the claims granted to the DIP Lender hereunder;

b. ***Adequate Protection Liens***.  Subject to the Carve-Out and the DIP Liens and DIP Security Interests, as security for the Adequate Protection Obligations, effective as of the Petition Date and perfected without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession, control or further act by the Prepetition Lender of or with respect to any Postpetition Collateral (as defined below), the following security interests and liens are hereby granted to the Prepetition Lender (all such liens and security interests, the "**Adequate Protection Liens**"):

i.  Subject to the Carve-Out and the DIP Liens and DIP Security Interests, pursuant to Bankruptcy Code sections 361(2) and 363(c)(2), a valid, binding, continuing, enforceable, fully-perfected, non-avoidable additional and replacement first priority lien on, and security interest in, all property (including any previously unencumbered property, but excluding Avoidance Actions), whether now owned or hereafter acquired or existing and wherever located, of each Debtor and each Debtor's "estate" (as created pursuant to Bankruptcy Code section 541(a)), of any kind or nature whatsoever, real or personal, tangible or intangible, and now existing or hereafter acquired or created, including, without

limitation, all cash, accounts, inventory, goods, contract rights, mineral rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, accounts receivable, receivables and receivables records, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, any owned real estate, real property leaseholds, fixtures, deposit accounts, commercial tort claims, securities accounts, instruments, investment property, letter-of-credit rights, supporting obligations, machinery and equipment, real property leases (and proceeds from the disposition thereof), other equity or ownership interests held by a Debtor, including equity interests in subsidiaries and non-wholly-owned subsidiaries, money, investment property, Cash Collateral, and all cash and non-cash proceeds, rents, products, substitutions, accessions, and profits of any of the collateral described above, documents, vehicles, intellectual property, securities, partnership or membership interests in limited liability companies and capital stock, including, without limitation, the products, proceeds and supporting obligations thereof, whether in existence on the Petition Date or thereafter created, acquired, or arising and wherever located (all such property (including the Junior Collateral as defined herein), other than the Prepetition Collateral in existence immediately prior to the Petition Date, being collectively referred to as, the "**Postpetition Collateral**" and collectively with the Prepetition Collateral, the "**Collateral**"), which liens and security interests shall be senior to any and all other liens and security interests other than the DIP Liens and DIP Security Interests, Carve-Out, and the Permitted Priority Liens, if any (the "**Approved Liens**").

ii.  Subject to the DIP Liens and DIP Security Interests and the Carve-Out, pursuant to Bankruptcy Code sections 361(2) and 363(c)(2), a valid, binding, continuing, enforceable, fully-perfected non-avoidable junior priority replacement lien on, and security interest in, all property (excluding Avoidance Actions), whether now owned or hereafter acquired or existing and wherever located, of each Debtor and each Debtor's "estate" (as created pursuant to Bankruptcy Code section 541(a)), property of any kind or nature whatsoever, real or personal, tangible or intangible, and now existing or hereafter acquired or created, including, without limitation, all cash, accounts, inventory, goods, contract rights, mineral rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, accounts receivable, receivables and receivables records, general intangibles, payment

24

intangibles, tax or other refunds, insurance proceeds, letters of credit, contracts, owned real estate, real property leaseholds, fixtures, deposit accounts, commercial tort claims, securities accounts, instruments, investment property, letter-of-credit rights, supporting obligations, machinery and equipment, real property, leases (and proceeds from the disposition thereof), other equity or ownership interests held by a Debtor, including equity interests in subsidiaries and non-wholly-owned subsidiaries, money, investment property, Cash Collateral, and all cash and non-cash proceeds, rents, products, substitutions, accessions, and profits of any of the collateral described above, documents, vehicles, intellectual property, securities, partnership or membership interests in limited liability companies and capital stock, including, without limitation, the products, proceeds and supporting obligations thereof, whether now existing or hereafter acquired, that is subject only to (x) the DIP Liens and DIP Security Interests, (y) the Permitted Priority Liens, or (z) valid and non-avoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date to the extent permitted by Bankruptcy Code section 546(b), which valid, perfected and unavoidable liens are senior in priority to the security interests and liens in favor of the Prepetition Lender (the "**Junior Collateral**").

iii.   Other than with respect to the DIP Liens and DIP Security Interests and the Carve-Out, the Adequate Protection Liens shall not be (1) subject or subordinate to, or *pari passu* with, (a) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under Bankruptcy Code section 551 or (b) any lien or security interest arising on or after the Petition Date, subject to the Carve-Out, or (2) except as otherwise set forth herein, subordinated to or made *pari passu* with any other lien, claim or security interest under Bankruptcy Code sections 363 or 364 or otherwise.

c.   Subject to the terms and conditions contained in this paragraph, the prepetition security interests and liens of the Prepetition Lender, the Adequate Protection Liens and the Adequate Protection Superpriority Claims shall be subject and subordinate to the Carve-Out and the DIP Liens and DIP Security Interests and DIP Superpriority Claim.

12.   As additional adequate protection:

a.      Without limiting any rights of the Prepetition Lender under section 506(b) of the Bankruptcy Code, which rights are hereby preserved, and in consideration, and as a requirement for obtaining the consent of the Prepetition Lender to entry of this Interim Order and the Debtors' consensual use of Cash Collateral as provided herein, the Debtors shall promptly pay or reimburse, in full in cash, regular interest payments on the Prepetition Obligations in accordance with the Prepetition Loan Documents, which shall continue to accrue at the default rate(s) set forth therein, whether or not budgeted in the Initial Budget, and without further notice, motion, or application to, order of, or hearing before, this Court, it being understood that all such interest shall be included as Adequate Protection Obligations owed by the Debtors to the Prepetition Lender.  Nothing herein shall be deemed a waiver of any claim by the Prepetition Lender for reimbursement of any prepetition or postpetition fees, expenses, or other amounts payable under the Prepetition Loan Documents, which claims are hereby preserved.

b.      The Prepetition Lender shall have the right to credit bid (x) up to the full amount of the Prepetition Obligations (including, without limitation, all accrued and unpaid interest, fees (including reasonable attorneys' fees), and expenses) under the Prepetition Loan Documents and (y) the Adequate Protection Superpriority Claims and any unpaid amounts due and owing under paragraph 6(a) hereof, as applicable, in the sale of any of the Collateral, including, without limitation, pursuant to (i) Bankruptcy Code section 363, (ii) a plan of reorganization or a plan of liquidation under Bankruptcy Code

ACTIVE 714056660v1

section 1129, or (iii) a sale or disposition by a chapter 7 trustee for any Debtor under Bankruptcy Code section 725.

13.    This Interim Order shall be sufficient and conclusive evidence of the validity, enforceability, perfection, priority and non-avoidability of the Adequate Protection Liens granted to the Prepetition Lender hereunder without the necessity of (a) filing or recording any financing statement, deed of trust, mortgage, control agreement, or other instrument or document which may otherwise be required under the law of any jurisdiction or (b) taking any other action to validate or perfect these liens or to entitle the liens with the priorities granted herein. Notwithstanding the foregoing, the Prepetition Lender may, in its sole discretion, enter into and file, as applicable, financing statements, mortgages, security agreements, notices of liens, and other similar instruments, agreements, or documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices, and other agreements or documents shall be deemed to have been filed or recorded as of the date of entry of this Interim Order.  The applicable Debtors are authorized to execute and deliver to the Prepetition Lender all such financing statements, mortgages, notices, and other documents as the Prepetition Lender may reasonably request to evidence and confirm the contemplated priority of the liens granted pursuant hereto.  Without limiting the foregoing, the Prepetition Lender, in its discretion, may file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any

ACTIVE 714056660v1

jurisdiction in which any Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Interim Order.

14.    This Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition Lender to request additional forms of adequate protection at any time or any party-in-interest's right to object thereto.

15.    The Debtors' rights to use Cash Collateral shall automatically terminate (the date of such termination, the "**Termination Date**"), without further notice or court proceeding, on the earliest to occur of (i) one business day after the Final Hearing Date (or, if consented to in writing by the Prepetition Lender acting in its sole discretion, such later date), if the Final Order (provided that such Final Order has not been reversed, vacated, stayed, unless such stay has been vacated, or appealed, unless such appeal has been dismissed or otherwise finally resolved and affirms entry of the Final Order), which Final Order shall be consistent with this Interim Order or otherwise acceptable to the Prepetition Lender, in its sole discretion, has not been entered by this Court on or before such date; or (ii) November 2, 2025 (or, if consented to in writing by the Prepetition Lender acting in its sole discretion, such later date); or (iii) the occurrence of any events set forth in this paragraph 15(a) through (h) below, unless waived by the Prepetition Lender, in its sole discretion) (each of the following events, a "**Termination Event**" and collectively, the "**Termination Events**"):

a.    on or before the date that is August 29, 2025, the Bidding Procedures Order shall not have been approved by order of the Court, in form and substance reasonably acceptable to the Prepetition Lender and DIP Lender;

b.        on or before October 3, 2025, the Court shall not have entered a sale order approving one or more agreements for the sale of substantially all of the Debtors' assets (the "**Approved Sale(s)**"), which order and agreement(s) shall be in form and substance reasonably acceptable to the Prepetition Lender and DIP Lender (and, at a minimum, shall provide for proceeds sufficient to repay the Prepetition Obligations and DIP Obligations plus any accrued fees and interest with respect to same in cash at the closing of the Approved Sale(s));

c.        the Approved Sale(s) shall not have been consummated by November 2, 2025;

d.        the Debtors' failure to: (i) use the Collateral, including without limitation Cash Collateral, in a manner consistent with the Initial Budget, or (ii) comply with any other covenant or agreement specified in this Interim Order; in each case where such failure shall have continued unremedied for three (3) business days following receipt of written notice by the Debtors from the Prepetition Lender of such failure;

e.        the date any provision of this Interim Order (or the Final Order, as applicable) shall for any reason cease to be valid and binding or any Debtor shall so assert in any pleading filed in any court;

f.        the date (i) any Chapter 11 Case shall be dismissed or converted to a case under chapter 7 of the Bankruptcy Code or any Debtor shall file a motion or other pleading seeking the dismissal or conversion of any Chapter 11 Case pursuant to Bankruptcy Code section 1112; or (ii) a trustee, responsible officer, or an examiner (other

29

than a fee examiner) pursuant to Bankruptcy Code section 1104 is appointed or elected, as applicable, in any Chapter 11 Case, any Debtor applies for, consents to, or acquiesces in, any such appointment, or the Court shall have entered an order providing for such appointment, in each case without the prior written consent of the Prepetition Lender, in its sole discretion; or

g.    commencement of any action, including the filing of any pleading, by any Debtor against the Prepetition Lender with respect to any of the Prepetition Obligations or Prepetition Liens.

16.    <u>Effect of Stipulations</u>.

a.    The stipulations, releases and admissions contained in this Interim Order shall be binding upon the Debtors and any successor(s) thereto in all circumstances.  The stipulations, releases and admissions contained in this Interim Order, shall be binding upon all other parties in interest, including the Committee **(if any)** or any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors (a "**Trustee**"), unless and to the extent (a) the Committee **(if any)** or any other party in interest other than any Debtor (including any Trustee), in each case, after obtaining requisite standing, has duly filed an adversary proceeding challenging in whole or part the validity, enforceability, priority or extent of the Prepetition Obligations or the liens on the Prepetition Collateral securing the Prepetition Obligations held by or on behalf of the Prepetition Lender or otherwise asserting or prosecuting any Avoidance Actions, recharacterization, subordination, "lender liability", or any other claims, counterclaims or causes of action,

objections, contests or defenses (collectively, the "**Claims and Defenses**") against the
Prepetition Lender in connection with any matter related to the Prepetition Obligations,
or the Prepetition Collateral or the Prepetition Liens by no later than the later of (i) in the
case of any such adversary proceeding filed by the Committee, ~~if any,~~ or another party in
interest with requisite standing, fifty (50) days after the Petition Date, and (ii) any such
later date agreed to in writing by the Prepetition Lender, in its sole discretion (the time
period established by the later of the foregoing clauses (i) and (ii), the "**Challenge
Period**"), and (b) an order is entered by a court of competent jurisdiction and becomes
final and non-appealable in favor of the plaintiff sustaining any such Claims and
Defenses or other challenge or claim in any such duly filed adversary proceeding.  If no
such adversary proceeding is timely filed prior to the expiration of the Challenge Period
by the Committee or a party in interest, in any case which has been granted the
appropriate standing, without further order of this Court: (x) the Prepetition Obligations
shall constitute allowed claims, not subject to counterclaim, setoff, subordination,
recharacterization, defense, avoidance, contest, attack, objection, recoupment,
reclassification, reduction, disallowance, recovery, disgorgement, attachment, "claim" (as
defined in the Bankruptcy Code), impairment, subordination (whether equitable,
contractual or otherwise) or other challenge of any kind pursuant to the Bankruptcy Code
or applicable nonbankruptcy law, for all purposes in these Chapter 11 Cases and any
subsequent chapter 7 cases; and (y) the Prepetition Obligations, and the Prepetition
Lender's Prepetition Liens on the Prepetition Collateral shall not be subject to any other

31

or further Claims and Defenses or other challenge and any party in interest shall be forever enjoined and barred from seeking to exercise the rights of the Debtors' estates or taking any such action, including any successor thereto (including any estate representative or a Trustee, whether such Trustee is appointed or elected prior to or following the expiration of the Challenge Period).  If any such adversary proceeding is timely filed by a party in interest with appropriate standing prior to the expiration of the Challenge Period, the stipulations and admissions contained in this Interim Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any Committee and any other Person, including any Trustee, except as to any such findings and admissions that were expressly and successfully challenged in such adversary proceeding.

b.       Nothing in this Interim Order vests or confers standing on the Committee or any other person, entity, or party-in-interest to assert any claim on behalf of any Debtor or any estate of any Debtor, or relieves the Committee or any other person, entity, or party-in-interest from any requirement under the Bankruptcy Code or otherwise to obtain standing and authorization from this Court prior to asserting any claim on behalf of any Debtor or any estate of any Debtor.

17.      Subject to the entry of a Final Order, except to the extent of the Carve-Out, no costs or expenses of administration of the Chapter 11 Cases, which have been or may be incurred in any of the Chapter 11 Cases at any time shall be charged against or recovered from the Prepetition Lender or DIP Lender, any of the Prepetition Obligations or DIP Obligations, or the

Collateral pursuant to Bankruptcy Code sections 105(a) or 506(c), or otherwise, without the prior written consent of either the Prepetition Lender or DIP Lender in each of their sole discretions, and no such consent shall be implied from any other action, inaction, or acquiescence by any of the Prepetition Lender or DIP Lender or any of their representatives.

18.     The provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including the DIP Lender, Prepetition Lender, ~~any~~the Committee, the Debtors and their respective successors and assigns (including any Trustee hereinafter appointed or elected for the estates of any of the Debtors, an examiner appointed pursuant to Bankruptcy Code section 1104, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) as provided herein.   The protections afforded to the DIP Lender and the Prepetition Lender under this Interim Order and any actions taken pursuant thereto, shall survive the entry of an order dismissing any or all of the Chapter 11 Cases or converting any or all of the Chapter 11 Cases into a case(s) under chapter 7 of the Bankruptcy Code, and the DIP Liens, Adequate Protection Liens and the Adequate Protection Superpriority Claims shall continue in the Chapter 11 Cases, in any such successor case(s) or after any such dismissal.   Except as otherwise provided herein, the DIP Liens, Adequate Protection Liens and the Adequate Protection Superpriority Claims shall maintain their priorities as provided in this Interim Order and the Final Order, and not be modified, altered or impaired in any way by any other financing, extension of credit, incurrence of indebtedness, or any conversion of any of the Chapter 11 Cases into a case(s) pursuant to chapter 7 of the Bankruptcy Code or dismissal of any of the Chapter 11

Cases, or by any other act or omission until the DIP Loan and the Prepetition Obligations are indefeasibly paid in full in cash.

19.    The automatic stay shall be modified or lifted to the extent necessary to allow the Prepetition Lender and DIP Lender to take any actions or to provide any notices to the Debtors, in each case, as contemplated by and in accordance with this Interim Order.

20.    Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution of effectiveness of this Interim Order as provided in such Rules. This Interim Order shall constitute findings of fact and conclusions of law, and the Debtors are authorized to take all actions necessary or appropriate to carry out the relief granted in this Interim Order. To the extent that any finding of fact shall be determined to be a conclusion of law it shall be so deemed and vice versa.

21.    The terms of this Interim Order shall remain in full force and effect notwithstanding any subsequently entered order of this Court, including but not limited to any order entered in connection with the Motion for further interim or final relief, unless explicitly modified by any subsequently entered order.

22.    The terms and conditions of this Interim Order shall be binding upon, and inure to the benefit of, the parties hereto, and their respective successors and assigns, including but not limited to any trustee appointed in this or any superseding bankruptcy case.

ACTIVE 714056660v1

23.     In the event of any conflict in any of the terms or provisions of this Interim Order with any terms or provisions of the financing arrangements set forth in the DIP Agreement, the terms and provisions of this Interim Order shall prevail and be controlling as of the date of entry.

24.     The priority of the DIP Lender's liens and security interests granted under this Interim Order shall not be "primed" pursuant to 11 U.S.C. § 364(d), nor shall any of the DIP Lender's rights under this Interim Order be modified or affected by any plan of reorganization confirmed in this Chapter 11 case without the express written consent of the DIP Lender.

25.     Notwithstanding any provision of this Interim Order to the contrary, because the DIP Lender has agreed to fund the entire DIP Facility pursuant to this Interim Order, the continued effectiveness of this Interim Order and the DIP Lender's agreement to forbear from exercising remedies shall be expressly conditioned upon the entry of a Final Order that is, in all material respects, consistent with this Interim Order, or otherwise acceptable to the DIP Lender in its sole discretion, no later than August 31, 2025, or such later date as may be agreed in writing by the DIP Lender (the "**Final Order Deadline**"). If a Final Order is not entered on or before the Final Order Deadline, the DIP Lender may, subject to paragraph I(14) above:

(a) the DIP Lender may declare an immediate Event of Default under the DIP Agreement;

(b) the automatic stay shall be deemed vacated and modified solely to permit the DIP Lender to file a notice of termination and exercise all rights and remedies upon the filing of such notice on the docket of these Chapter 11 Cases (without further Court order), and the Debtors, Committee, and all other parties in interest may contest any such notice of termination.

35

(c) the Debtors shall be deemed to have waived any further right to use DIP proceeds or Cash Collateral;

(d) the DIP Lender shall be entitled to apply all proceeds in its possession to the DIP Obligations, and exercise all rights and remedies under the DIP Agreement, this Interim Order, and applicable law; and

(e) this Court shall retain exclusive jurisdiction to enforce the DIP Lender's rights and remedies arising from the failure to obtain entry of the Final Order.

26.    The Court shall hold a Final Hearing on the Motion at _____.m. on August 2___, 2025 in **Courtroom 1201, United States Courthouse, United States Bankruptcy, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303**, which must be attended in person for presentation of evidence and testimony and otherwise may be attended in person or via the Court's Virtual Hearing Room. You may join the Virtual Hearing Room through the "Dial-in and Virtual Bankruptcy Hearing Information" link at the top of the homepage of the Court's website, www.ganb.uscourts.gov, or the link on the judge's webpage, which can also be found on the Court's website. Please also review the "Hearing Information" tab on the judge's webpage for further information about the hearing. You should be prepared to appear at the hearing via video, but you may leave your camera in the off position until the Court instructs otherwise. Unrepresented persons who do not have video capability may use the telephone dial-in information on the Court's webpage.

27.     This Court shall have and retain exclusive jurisdiction over the subject matter of this Order to resolve any dispute in connection with the rights and duties specified herein as a "core proceeding" under 28 U.S.C. § 157(b)(2).

28.     **Notwithstanding anything to the contrary in this Interim Order, all rights of the Committee to contest entry of the Final Order are preserved on all grounds that exist prior to entry of this Interim Order.**

###End of Order###

*[Signatures on following page]*

37

Prepared and presented by:

**GREENBERG TRAURIG, LLP**

*/s/ John D. Elrod*

John D. Elrod, GA Bar No. 246604
Jake Evans, GA Bar No. 797018
Allison J. McGregor, GA Bar No. 860865
3333 Piedmont Road NE, Suite 2500
Atlanta, GA 30305
Telephone: 678-553-2259
Facsimile: 678-553-2269
Email: elrodj@gtlaw.com
Jake.Evans@gtlaw.com
Allison.McGregor@gtlaw.com

*Proposed Counsel for the Debtors in Possession*

38

ACTIVE 714056660v1

## Distribution List

Wellmade Floor Coverings International, Inc.
1 Wellmade Drive
Cartersville, GA 30121

Greenberg Traurig, LLP
Terminus 200
3333 Piedmont Road, NE, Suite 2500
Atlanta, Georgia 30305
Attn: John D. Elrod

Kurtzman Carson Consultants LLC d/b/a Verita Global
222 N. Pacific Coast Highway, 3rd Floor
El Segundo, CA 90245
Attn: Drake D. Foster

Office of the United States Trustee
362 Richard Russell Federal Building
75 Ted Turner Drive, SW
Atlanta, GA 30303

ACTIVE 714056660v1

| Summary report: | |
|---|---|
| **Litera Compare for Word 11.11.0.158 Document comparison done on 8/20/2025 10:57:36 PM** | |
| **Style name:** GT-1 - No headers and footers, no moves, no comments | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://dmsamericas.gtlaw.com/active/714029475/1 - Wellmade - Second Interim DIP Financing Order.docx | |
| **Modified DMS:** iw://dmsamericas.gtlaw.com/active/714056660/1 - Wellmade - Second Interim DIP Financing Order (c'ee 8.20.25 edits).docx | |
| **Changes:** | |
| **Add** | 6 |
| Delete | 9 |
| Move From | 0 |
| Move To | 0 |
| **Table Insert** | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 15 |