**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

In re:

WELLMADE FLOOR COVERINGS
INTERNATIONAL, INC., *et al.*,

Debtors.

Chapter 11

Case No. 25-58764

(Jointly Administered)

**CREDITORS YUCONG LIU, YIXIANG ZHANG, AND CANGEN HAN'S
LIMITED OBJECTION TO DEBTORS' MOTION SEEKING ENTRY OF AN ORDER
SETTING A BAR DATE FOR FILING PROOFS OF CLAIM AND OTHER RELIEF**

On September 4, 2025, Wellmade Industries MFR. N.A. LLC and Wellmade Floor Coverings International, Inc. (together, "Debtors" or "Wellmade") filed a *Motion Seeking Entry of an Order (I) Setting a Bar Date for Filing Proofs of Claim; (II) Setting an Amended Schedules Bar Date; (III) Setting a Rejection Damages Bar Date; (IV) Approving the Form of and Manner For Filing Proofs of Claim; (V) Approving Notice of the Bar Dates; and (VI) Granting Related Relief* (ECF No. 137) (the "Motion"). Creditors Yucong Liu, Yixiang Zhang, and Cangen Han (the "Labor Plaintiffs") now file this Limited Objection in response to the Motion.[1] The crux of this Limited Objection is that (a) the Debtors' proposal will not provide any notice to a large group of workers exploited by the Debtors because the Debtors argue the workers are not their "employees," and (b) the Debtors' proposed form of notice—to send by mail an English-language letter full of legalese and to publish it in the *Wall Street Journal*—is not reasonably calculated to inform unsophisticated Chinese and Spanish-speaking workers, who do not correspond by mail, of their

---

[1] The Labor Plaintiffs are listed as creditors on the Debtors' most recent Schedules of Assets and Liabilities (ECF No. 166) and intend to file Proofs of Claim in the near future.

rights.[2] At this stage in the proceedings, the class of potential creditors should be broadly defined

to include all individuals who may have potential claims against the Debtors, and certainly

individuals who worked at the Debtors' factory (and sometimes even suffered physical injuries

there) should be receiving reasonable notice of claim bar date. *See* 11 U.S.C. § 101(5) ("claim"

also includes disputed claims). This Limited Objection is supported by the Declaration of Aaron

Halegua (**Appendix A** ("Halegua Decl.")) and the Declaration of Yucong Liu (**Appendix B** ("Liu

Decl.")), both dated September 14, 2025.

**INTRODUCTION**

1.      The Labor Plaintiffs are individuals from China, who speak little or no English, and

were brought by Debtors to work at their factory in Cartersville, Georgia (the "Cartersville

Facility"). Despite the promises of good conditions made to them in China, upon arrival, Debtors

confiscated the Labor Plaintiffs' passports, ordered them to work over 72 hours per week with no

overtime pay, deducted rent and utilities from their wages, suffered them to work in unsafe

conditions without adequate personal protective equipment (PPE), and threatened to case them

physical or financial harm them if they stopped working for Debtors. In addition to the Labor

Plaintiffs, there are dozens of other individuals who Debtors brought from China on visas to work

at the Cartersville Facility and subjected to the same conditions as the Labor Plaintiffs. This group

of workers is referred to herein as the "Visa Workers."

2.      In addition to the Visa Workers, a large number of production workers were

recruited through labor agencies or labor agents to work at the Cartersville Facility and were paid

---

[2] Counsel for the Labor Plaintiffs contacted Debtors' counsel via email on September 11, 2025, in order to see if this objection could be resolved without the need to involve the Court. However, no response was received from Debtors' counsel.

hourly for their work (hereinafter, the "Agency Workers"). Agency Workers, who were typically

either Chinese or Latino, also worked over 72 hours per week. (Halegua Decl. ¶ 9; Liu Decl. ¶ 10).

3.    None of the Labor Claimants, whether Visa Workers or Agency Workers, ever received

the overtime premiums to which they were entitled for working beyond 40 hours in a week.

4.    On March 26, 2025, federal agents conducted a raid at the Cartersville Facility,

where they discovered at least 300 employees. (Halegua Decl., Ex. A). Wellmade owners and

managers were taken into custody based on accusations of luring workers from overseas under

false pretenses and subjecting them to harsh conditions with minimal pay. (*Id.*). The federal

authorities later announced that there was an ongoing investigation into labor trafficking. (*Id.*).

5.    On May 27, 2025, the Labor Plaintiffs filed a Complaint in the U.S. District Court

for the Northern District of Georgia, *Liu, et al. v. Wellmade Industries Mfr. N.A. LLC, et al.*, Case

No. 4:25-cv-001340-WMR (the "District Court Litigation"). A copy of the Complaint is attached

as **Appendix C** ("Compl."). The Complaint brings a collective action (opt-in) claim under the Fair

Labor Standards Act (FLSA) for unpaid overtime on behalf of all individuals who worked at the

Cartersville Facility for more than 40 hours in a workweek. The Complaint also brings class action

claims, pursuant to Fed. R. Civ. P. 23, for Chinese nationals who worked at the Cartersville Facility

for violations of the Trafficking Victims Protection Act ("TVPA"), Georgia Racketeer Influenced

and Corrupt Organizations Act ("RICO"), Unjust Enrichment, and *Quantum Meruit.*

6.    In the District Court Litigation, Labor Plaintiffs seek on behalf of themselves and

other class or collective members: (a) economic damages, non-economic damages, punitive

damages, and attorneys' fees and costs for violations of the TVPA (Compl. ¶¶ 247–290);

(b) compensatory damages, punitive damages, trebled damages, attorneys' and experts' fees and

costs, and injunctive relief for violations of the Georgia RICO (Compl. ¶¶ 267–268); (c)

disgorgement of ill-gotten gains, punitive damages, and attorneys' fees and costs for unjust

enrichment (Compl. ¶¶ 276–279); and (d) recovery of the reasonable value of Labor Plaintiffs' and

class members' labor, punitive damages, and attorneys' fees and costs for *quantum meruit* (Compl.

¶¶ 287–290). Labor Plaintiffs and members of the FLSA collective also seek compensation for

illegal deductions, unpaid overtime, an equal amount as liquidated damages, and attorneys' fees

and costs for violations of the FLSA (Compl. ¶¶ 266–267).

7.      The Visa Workers and Agency Workers who may have claims that fall within the

FLSA collective or Rule 23 class pleaded in the Complaint are referred to herein as "Labor

Claimants."

8.      On August 4, 2025, Wellmade filed its Petition for bankruptcy under Chapter 11 of

the Bankruptcy Code. (ECF No. 1).

9.      On September 4, 2025, the Debtors filed their Motion requesting an order to, *inter

alia*, set bar dates for filing proofs of claim, approve Debtors' proposed form and manner of filing

proofs of claim and distributing notice of bar dates, and approve Debtors' proposed notice of bar

dates (the "Debtors' Notice").

10.     The Labor Plaintiffs are filing this Limited Objection on grounds that (a) the

Debtors do not intend to send notice to the Labor Claimants because Debtors do not consider them

as their "employees," and (b) the format of the Debtors' Notice and the proposed methods of

delivery are not reasonably calculated to inform the Labor Claimants of their rights. Accordingly,

the Labor Plaintiffs respectfully request that this Court: (i) Order that the Debtors' proposed claims

bar date will not apply to the claims of potential Labor Claimants; (ii) Order that the Labor

Claimants be provided supplemental notice; and (iii) Order that the notice to Labor Claimants

inform them of their rights in plain and simple language, as typically done in FLSA cases, as well

as be distributed through means reasonably calculated to reach the Labor Claimants.

## LEGAL STANDARD

11.     In a bankruptcy proceeding, Notice of Claim Bar Dates must be "reasonably

calculated, under all the circumstances," to apprise potential creditors of the pendency of the bar

date so that creditors have the opportunity to file claims. *Mullane v. Cent. Hanover Bank & Trust

Co.*, 339 U.S. 306, 314 (1950); *see also In re BGI, Inc.*, 476 B.R. 812, 816, 820 (Bankr. S.D.N.Y.

2012) (debtor provided adequate notice where debtor transmitted emails to "all … [potential

claimants] for whom they possessed email addresses…" as well as created a webpage containing

the court-approved notice) (internal citation and quotation omitted); *In re Grand Union Co.*, 204

B.R. 864, 871 (Bankr. D. Del. 1997) ("A claimant, who is not apprised with reasonable notice of

the bar date, is not bound by the legal effects of the confirmation of the plan and should be allowed

to file a late proof of claim … Whether a creditor received adequate notice of a bar date depends

upon the facts and circumstances of a given case.") (internal citations and quotations omitted).

12.     In the context of a FLSA case, the routine procedure in the Eleventh Circuit is to

first define the group of workers who are similarly situated to the plaintiffs (the "collective") and

then to issue a notice of the pending lawsuit informing potential collective members of their rights

and the procedure to opt-in to the pending action. *Prowant v. Federal National Mortgage

Association*, No. 1:14-CV-3799, 2017 WL 11634373, at *2 (N.D. Ga. 2017). Such notice to the

potential collective is to be provided in simple and plain language that will not confuse the affected

workers, and courts have broad discretion to tailor the contents of the notice accordingly. *Prowant*,

2017 WL 11634373, at **4–5 (approving changes to FLSA collective notice in order to reduce

confusing language that might mislead a reasonable person about their eligibility to join a case).

*See also de la Fuente v. Columbia Recycling Corp.*, 704 F. Supp. 3d 1351, 1355 (N.D. Ga. 2023) (employees must receive "accurate and timely" notice permitting them to make "informed decisions" about whether to participate in the litigation).

## ARGUMENT

**A. Debtors' Notice is not reasonably calculated to provide notice to Labor Claimants.**

13.     Under the plan proposed in the Motion, Debtors propose providing notice to "current and former employees" and limiting their obligation to notifying creditors who can be identified through "contact information … available in the Debtors' records." (Motion ¶ 12(m)).

14.     Debtors have communicated to Labor Plaintiffs' counsel that Debtors do not consider the Labor Plaintiffs or the similarly-situated Labor Claimants to be there "employees." (Halegua Decl. ¶ 10). Therefore, the proposed notice plan does not involve providing notice to the Labor Claimants. Indeed, even those Agency Workers who already filed consent forms in the District Court Litigation to join the FLSA case against Debtors, such as Wen Chen, Shun Yu, and Shengda Yu, are not listed in the matrix of creditors to receive notice. (*See* ECF No. 166).

15.     Debtors have also proposed to provide notice by publication in *The Wall Street Journal*. (Motion ¶ 15). However, this will not provide adequate notice to the Labor Claimants. The undersigned counsel currently represent fourteen (14) Labor Claimants, most of whom do not read or understand English at all, and none of whom read English-language newspapers. (Liu Decl. ¶ 17; Halegua Decl. ¶ 32). Therefore, only providing notice in English is improper.

16.     Debtors' proposed notice is also rife with complicated language and legal jargon that is difficult even for a native English speaker who is not sophisticated on legal matters to understand. *See In re Grand Union Co.*, 204 B.R. at 870-3 ("four page, over 1,000 word [bar date notice] couched with legalese … [and] not easily comprehensible by a lay-person" is inappropriate

where claimants are not "experienced in sophisticated commercial matters or … bankruptcy matters"). Here, the proposed Debtors' Notice is three pages single-spaced, almost 1,000 words long, contains numerous paragraphs consisting of single lengthy sentences, and is filled with complex "legalese" that a lay person, regardless of English proficiency, would likely not understand. For example, the terms "proofs of claim," "unsecured claim," "executory contract," and "Chapter 11 Plan" are used liberally without any definition provided. Thus, the Debtors' Notice is not reasonably calculated to provide notice to creditors such as the Labor Claimants, who are generally unsophisticated immigrants who do not speak English and have no background in law.

17.    Furthermore, Debtors' owners and managers communicated with the Labor Claimants almost exclusively through the Chinese social media application WeChat. (Liu Decl. ¶¶ 12–15, Exs. A, B; Halegua Decl. ¶¶ 26–27, 29–30, Exs. L, M). Debtors did not regularly, if ever, correspond with Labor Claimants through the U.S. mail. Therefore, the proposed means for delivering notice is not reasonably calculated to notify the Labor Claimants.

**B.  Labor Claimants have FLSA and other legal claims against Debtors.**

18.    Under the FLSA, Debtors would be deemed either the "employers" or "joint employers" of the Labor Claimants and thus liable for overtime violations under that statute. Labor Claimants also have claims against the Debtors that do not depend on the existence of an "employer-employee" relationship, such as forced labor or trafficking claims under the TVPA.

19.     Under the FLSA, an entity is considered to "employ" a worker whom it "suffer[s] or permit[s] to work." 28 U.S.C. § 203(g). In evaluating whether an entity employs a worker, courts look to the "economic reality" of the situation, not the paper-based formalities, and construe the remedial purpose of the FLSA broadly. *Antenor v. D & S Farms*, 88 F.3d 925, 933 (11th Cir. 1996). Additionally, the FLSA recognizes that a worker may have more than one "employer" under the

statute, and each such "joint employer" is equally liable for any violations of the statute. *Id.* In the

Eleventh Circuit, courts look to the following inexhaustive factors to determine if an entity is a

joint employer of a worker:

> (1) the nature and degree of control of the workers;
> (2) the degree of supervision, direct or indirect, of the work;
> (3) the power to determine the pay rates or the methods of payment of the workers;
> (4) the right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers;
> (5) preparation of payroll and the payment of wages;
> (6) ownership of facilities where work occurred;
> (7) performance of a specialty job integral to the business; and
> (8) investment in equipment and facilities."

*Id. See also Guevara v. Lafise Corp.*, 127 F.4th 824, 831 (11th Cir. 2025).

20.    Under these factors, Debtors easily qualify as the joint employer of the Labor

Claimants. As set forth in detail in the Complaint, and in the Halegua and Liu Declarations, Debtors

exercised extensive control over all aspects of Labor Claimants' work at the Cartersville Facility

and, indeed, life beyond the Cartersville Facility. In particular, Debtors exercised control by

confiscating worker passports (which one worker needed to call the police to have returned);

Debtors chose which workers to hire from China and had the power to fire all workers; Debtors

entered all workers into their facial recognition and fingerprinting system; Debtors' owners and

managers directly supervised all workers in the Cartersville Facility; Debtors set the pay rates for

all workers; Debtors made direct money transfers to Labor Claimants; Debtors unilaterally decided

Labor Claimants' work schedules; Debtors controlled the Cartersville Facility in which Labor

Claimants worked, and invested millions of dollars to purchase the machinery there that caused

Labor Claimants' physical injuries; and the jobs performed by Labor Claimants involved using

Wellmade's own equipment for the production of flooring.  (*See* Compl. ¶¶ 95–149; Halegua Decl.

¶¶ 12-27, Exs. B–M; Liu Decl. ¶¶ 4–9, 16, Exs. A, B).

8

21.     As for the claims under the TVPA, any legal entity who "knowingly benefits, financially or by receiving anything of value" from subjecting a victim to forced labor, trafficking, or confiscating their identity documents is liable to those victims. 18 U.S.C. §§ 1589(b), 1590(a), 1592, 1595(a). No formal employment relationship is necessary. As set forth in detail in the Complaint, the Labor Claimants had their passports confiscated by the Debtors; the Debtors compelled them to work long hours and threatened to harm them if they stopped; and the Debtors recruited, transported, and harbored Labor Claimants while they were subjected to forced labor. This is another compelling reason that the Labor Claimants must receive notice of their rights in these bankruptcy proceedings.

C. **Providing supplemental notice to Labor Claimants, in a format calculated to inform them of their rights, is necessary and appropriate.**

22.     The FLSA recognizes the need to provide timely notice to workers who may have claims against a company so that they may be informed of their rights and decide whether to take action to preserve those rights before the statute of limitations extinguishes those claims. For this reason, courts use a "fairly lenient" standard to determine whether it is appropriate to send notice to a group of workers who are similarly situated to the plaintiffs in a FLSA action. *de la Fuente*, 704 F. Supp. 3d at 1356; *see also Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996) (a plaintiff's burden at the certification and notice stage is "not heavy"). Labor Claimants should not be deprived of their right to learn about their potential claims under the FLSA simply because Debtors have filed for bankruptcy (and thus stayed the District Court Litigation) before a motion could be made to provide notice to all similarly-situated workers.

23.     Courts also recognize that notice to workers with potential FLSA claims should be in a format that is straightforward and easy to understand, particularly to lay people who are not legally sophisticated. *Prowant*, 2017 WL 11634373, at **4–5. Again, Labor Claimants should not

be deprived of their right to notice that is reasonably calculated to inform them of their rights under the FLSA simply because the Debtors filed for bankruptcy before a motion to distribute notice to the Labor Claimants could be filed in the District Court Litigation.

24.    A typical notice in an FLSA case would, for instance, advise workers about their right to receive overtime if they worked for more than 40 hours per week and state that any such individuals may have a legal claim. By contrast, the proposed Debtors' Notice does not mention anywhere how potential Labor Claimants may determine whether they have a valid claim, nor does it mention anything about unpaid overtime.

25.    Moreover, when notice is provided under the FLSA, courts have approved using means other than mailings that are more likely to actually reach the impacted workers, such as notice through email, text message, and WhatsApp. *de la Fuente*, 704 F. Supp. 3d at 1358.[3]

26.    In similar situations where an FLSA claim has been brought and then the defendant files for bankruptcy, bankruptcy courts have permitted the distribution of notice to potential FLSA collective members informing them of their rights under that statute to proceed. *See, e.g., In re Buffets, LLC, et al.*, No. 16-50557-rbk, ECF No. 1378 (W.D. Tx. Bankr. Oct. 17, 2016) (granting motion to modify § 362(a) automatic stay and permit distribution of a FLSA notice to workers so that they could file proofs of claim against the bankruptcy estate). (*See also* Halegua Decl., Ex. N (copy of the Order and Notice from the *In re Buffets* bankruptcy case)).

---

[3] In the analogous context of a class action, Rule 23(c)(2) of the Federal Rules of Civil Procedure instructs courts to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort;"; notes that not only mail, but "electronic means" or any "other appropriate means" can be used; and mandates that the notice "must clearly and concisely state in plain, easily understood language" the relevant information.

27.      Labor Plaintiffs have provided as **Appendix D** a sample of an appropriate notice for this case. Labor Plaintiffs are well-aware that possible alternatives to issuing their proposed notice would include (i) seeking relief from the automatic stay to permit the District Court to certify a colletive under the FLSA and oversee a notice process, or (ii) moving for certification of a class (or multiple classes) under Rule 7023 of the Federal Rules of Bankruptcy Procedure. The notice and procedure proposed by Plaintiffs in **Appendix D** is designed to be a more streamlined and efficient method for effectuating notice to the Labor Claimants and having Proofs of Claim timely filed in an appropriate format. In particular, it is important that Labor Claimants are able to call or contact an attorney who speaks their language and can answer questions about the bankruptcy process and their legal rights.[4] Moreover, the notice issued would be made available in at least the following languages: English, Chinese, and Spanish. *See, e.g., In re Energy Future Holdings*, 949 F.3d 806, 823 (3d. Cir. 2020) (recognizing as sufficient notice publication "in seven consumer magazines, 226 local newspapers, three national newspapers, forty-three Spanish-language newspapers, eleven union publications, and five Internet outlets").

**D. Debtors likely possess the names and contact information for the Labor Claimants and should provide such information to Labor Plaintiffs to effectuate notice**.

28.      Debtors should be in possession of the names and contact information for the Labor Claimants. The Debtors entered all such workers, including Visa Workers and Agency Workers, into a facial recognition system to control who had access to Wellmade's $35-million facility. The Debtors also entered Labor Claimants into the facility's fingerprinting system, which was used to track the hours of all workers. (Liu Decl. ¶ 9; Halegua Decl. ¶ 28). The Debtors made direct

---

[4] Labor Plaintiffs endeavored to engage Debtors in a collaborative discussion on the most efficient way to effectuate notice and permit claimants to file proofs of claims, but did not receive a response from Debtor. Accordingly, **Appendix D** was prepared by Labor Plaintiffs

payments to the bank accounts of both Visa Workers and Agency Workers. (Halegua Decl. ¶¶ 9, 15–16, Exs. D, E). For the Visa Workers, the Debtors submitted extensive paperwork to the U.S. Government to obtain visas for these individuals to come work at the Cartersville Facility. (Halegua Decl. ¶¶ 9, 13, Ex. B). For the Agency Workers, who were paid hourly, the Debtors must have invoices that were submitted by labor agents stating who worked at the factory and the dates and hours that they worked. (Halegua Decl. ¶ 9). If necessary, Debtors should also be required to obtain such information from the labor agents whom they used. *See, e.g., Chemetron Corp. v. Jones*, 72 F.3d 341, n.2 (1995) (a reasonable search may in some circumstances require a debtor to look beyond its own books and records to ascertain the identity of potential creditors).

29.      Debtors should provide the names and contact information of the Labor Claimants to counsel for the Labor Plaintiffs so as to administer an effective notice process. In the aforementioned *In re Buffets* case, the bankruptcy court directed the debtor to provide such information to counsel for the workers. (*See* Halegua Decl., ¶ 37, Ex. O). *See also de la Fuente*, 704 F. Supp. 3d at 1358 (requiring employer to provide plaintiffs in FLSA case with the name, address, email address, telephone number, and WhatsApp contact information for each putative collective member in an electronic format).

## CONCLUSION

30.      In light of the above, Labor Plaintiffs hereby request an Order from this Court issuing the following relief:

(a) Debtors' proposed bar date notice shall not apply to any Labor Claimants;

(b) Labor Claimants shall instead be required to assert any claims within forty-five (45) days following the issuance of proper, Court-approved notice;

(c) The notice shall use simple and plain language to inform Labor Claimants of their rights and be in a form substantially similar to that in **Appendix D**; be available in their native languages; and be transmitted through WeChat, text message, or other means reasonably calculated to provide notice to them;

(d) Debtors shall provide to Labor Plaintiffs' counsel all information related to the identity and contact information for the Labor Claimants, including but not limited to company records, data from Debtors' facial recognition system, WeChat messages and data, and invoices from their labor agents; and

(e) Debtors shall make reasonable efforts to obtain the identities and contact information for any Labor Claimants through the labor agents that Debtors used, and provide evidence of such to counsel for Labor Plaintiffs.

31.     To the extent that it is deemed necessary to modify the automatic stay in order to permit the exchange of information and issue the notice set forth above, the Labor Plaintiffs seek such relief from the automatic stay pursuant to 11 U.S.C. § 362.

Dated: September 15, 2025

Respectfully submitted,

/s/ Aaron Halegua
Aaron Halegua*
New York Bar No. 4764163
AARON HALEGUA, PLLC
524 Broadway, 11th Floor
New York, New York 10012
Telephone: (646) 854-9061
ah@aaronhalegua.com
*Admitted pro hac vice

13

*/s/ Daniel Werner*
Daniel Werner
Georgia Bar No. 422070
dwerner@radfordscott.com
Elaine Woo
Georgia Bar No. 430956
ewoo@radfordscott.com
RADFORD SCOTT LLP
125 Clairemont Ave., Suite 380
Decatur, Georgia 30030
Telephone: (678) 271-0300

*Attorneys for Creditors Yucong Liu,*
*Yixiang Zhang, and Cangen Han*