UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In re:<br><br>WELLMADE FLOOR COVERINGS INTERNATIONAL, INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 25-58764-SMS<br><br>(Jointly Administered**)** |

**ORACLE'S LIMITED OBJECTION TO AND RESERVATION OF RIGHTS REGARDING DEBTORS' SALE MOTION AND RELATED NOTICE OF PROPOSED ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS**

Oracle America, Inc., successor in interest to NetSuite, Inc. ("Oracle"), a creditor and contract counter-party in the above-captioned Chapter 11 case, submits this limited objection and reservation of rights ("Rights Reservation") regarding both: (1) *Motion of Debtors for Entry of Orders (I)(A) Establishing Bidding Procedures Relating to the Sale of Debtors' Assets, (B) Approving the Debtors' Entry Into the Stalking Horse Purchase Agreement and Related Bid Protections, (C) Establishing Procedures Relating to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (D) Approving Form and Manner of Notices Relating Thereto, (E) Scheduling a Hearing to Consider the Proposed Sale, and (F) Granting Related Relief; and (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Dkt. No. 38] ("Sale Motion"); and (2) *Notice of Proposed Assumption and Assignment of Certain Executory Contracts* [Dkt. No. 168] ("Assumption Notice"), filed by Wellmade Floor Coverings International, Inc., *et al.* ("Debtors").

**I.      INTRODUCTION**

In connection with the Sale Motion, the Debtors seek Bankruptcy Court authority to, among other things, assume and assign an executory contract between the Debtors and Oracle.

Oracle objects to, and reserves its rights regarding, the proposed assumption and assignment for several reasons.

First, the targeted Oracle agreement is, or pertains to, one or more licenses of intellectual property which is not assignable absent Oracle's consent pursuant to both the underlying license agreement and applicable law.

Second, the Assumption Notice does not provide a complete description of the contract identified and lacks relevant information, precluding identification of the targeted agreement. Therefore, Oracle is unable to determine which contract may be assumed and assigned as well as the accuracy of the proposed cure amount.

Third, at present, no adequate assurance information has been provided for the Stalking Horse (defined below) and the Stalking Horse may not be the ultimate purchaser/assignee.[1] Therefore, Oracle is unable to determine whether the successful bidder will be capable of performing under the terms of the contract which the Debtors seek to assume and assign.

Finally, the APA (defined below) contemplates a transition services agreement which may call for the unauthorized shared use of Oracle's license, in a manner which is not permitted by Oracle's agreements. Oracle objects to any unauthorized shared use of its licenses.

Accordingly, Oracle requests that the Court deny the Debtors' request for authority to assume and assign, transfer, or share use of, any Oracle agreement without Oracle's consent.

## II.     FACTUAL BACKGROUND

The Debtors filed the above captioned cases on August 4, 2025. The Debtors continue to operate as debtors in possession.

On August 8, 2025, the Debtors filed the Sale Motion seeking Court authority to sell substantially all of the Debtors' assets. The Sale Motion identifies AHF IC, LLC as the stalking horse bidder ("Stalking Horse").

---

[1] Oracle notes that a *Notice of Cancelation of Auction* [Dkt. No. 177] was filed on September 17, 2025, indicating that the auction has been cancelled, that the Debtors are no longer soliciting bids for their assets, and that the Debtors intend to seek Court approval of a private sale to the Stalking Horse. However, Oracle makes this argument in an abundance of caution in the even the private sale to the Stalking Horse is not consummated.

On August 25, 2025, the Court entered and Order [Dkt No 99] establishing the bidding procedures relating to the sale of the Debtors' assets. Attached as Exhibit "2" to the Order is the Asset Purchase Agreement between the Debtors and the Stalking Horse ("APA"). The APA contemplates that the parties will enter into a Transition Services Agreement ("TSA"), which will be included as part of the deliveries at closing (*See*, APA, Sections 2.8 (a)(v) and (b)(v).

It is unclear which services the Debtors and the Stalking Horse seek to share use of pursuant to the TSA. Therefore, Oracle reserves all rights in the event any provision in the APA, including the TSA, purports to authorize the shared use of Oracle's licensed software, whether post-closing, or at any other time. Oracle also reserves all rights regarding any subsequent asset purchase agreement which may contemplate transitional or shared use, and which involves an as yet unknown buyer.

On September 12, 2025, the Debtors filed the Assumption Notice which identifies one Oracle agreement described only as an "ERP Software Subscription" (the "Oracle Agreement"). The stated cure for the Oracle Agreement is $0.00.

On September 17, 2025, the Debtors filed a *Notice of Cancellation of Auction* [Dkt. No. 177], pursuant to which the Debtors indicated that they are no longer soliciting bids for an auction, as the Debtors and the Stalking Horse had reached an agreement for the private sale of the Debtors' assets. The Debtors provided notice that they intend to seek Court approval of the private sale to the Stalking Horse "in the near future."

### III. ARGUMENT

    **A.** **Debtors May Not Assume and Assign Any Oracle Agreement Absent Oracle's Consent Because the Oracle Agreement May Pertain to One or More Licenses of Intellectual Property.**

Section 365(c) of the Bankruptcy Code provides, in relevant part:

> The trustee may not assume or assign any executory contract ... of the debtor ... if (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor ..., whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and (B) such party does not consent to such assumption or assignment.

Federal law makes non-exclusive copyright licenses non-assignable absent consent of the licensor. *See In re Catapult Entertainment, Inc.*, 165 F.3d 747 (9th Cir. 1999), *cert. dismissed*, 528 U.S. 924 (1999) (patent law renders non-exclusive patent licenses personal and non-assignable under Bankruptcy Code § 365(c)(1)); *In re Sunterra Corp.*, 361 F.3d 257, 271 (4th Cir. 2004) (holding that a debtor was statutorily barred by § 365(c)(1) from assuming a computer software license where contract counterparty did not consent to the assumption); *see also In re Trump Entm't Resorts, Inc.*, 526 B.R. 116, 126 (Bankr. D. Del. 2015) ("Non-exclusive patent and copyright licenses create only personal and not property rights in the licensed intellectual property and so are not assignable."); *In re Rupari Holding Corp.*, 573 B.R. 111, 119 (Bankr. D. Del. 2017) (holding that the debtor could not assume and assign a trademark license without the consent of the non-debtor licensor).

Oracle's agreements are, or pertain to, non-exclusive licenses of copyrighted software. Therefore, pursuant to Bankruptcy Code section 365, the Debtors may not assume and assign any Oracle agreement without Oracle's consent. For the reasons discussed herein, Oracle does not consent to the Debtors' proposed assumption and assignment of the Oracle Agreement at this time.

### B. The Debtors Have Not Adequately Identified the Oracle Agreement to Be Assumed and Assigned.

The Assumption Notice does not provide sufficient information for Oracle to determine which contract the Debtors ultimately seek to assume and assign. Here, Oracle has two active contracts, Estimate Nos. 1648648 and 1646203. Based on the information provided in the Assumption Notice, it appears that the Debtors may wish to assume and assign Estimate No. 1648648. However, without more detailed information, Oracle is unable to determine whether it is evaluating the same agreement. For clarity, the Assumption Notice should identify the master agreement and the underlying support renewal or Estimate. Because the support agreements and master agreements relate to the underlying license agreements as part of substantially the same transactions, they constitute integrated contracts which may not be separately assumed and assigned – if that is the Debtors' intent. *See, e.g., In re Interstate Bakeries Corporation*, 751 F.3d

955, 961-2 (8th Cir. 2014); *In re Buffets Holdings*, 387 B.R. 115 (Bankr. D. Del. 2008). An executory contract must be assumed in its entirety and "[c]orrespondingly, all of the contracts that comprise an integrated agreement must either be assumed or rejected, since they all make up one contract." *In re Taylor-Wharton Int'l LLC*, 2010 WL 4862723, at *3 (Bankr. D. Del. Nov. 23, 2010) (citing *In re Exide Tech.*, 340 B.R. 222, 228 (Bankr. D. Del. 2006)). Under California law,[2] made applicable by the Oracle Agreements, "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." Cal. Civ. Code § 1642.

In order to clarify which Oracle contract the Debtors hope to assume and assign, Oracle requests that the Debtors specify the targeted contract's: (1) identification or contract number; (2) date; (3) associated support renewal or Estimate; and (4) governing license agreement. This information will enable Oracle to evaluate whether the Oracle Agreement is assignable, supported, expired, or in default, and, if in payment default, the appropriate cure amount. Additionally, the information will allow Oracle to assess whether Oracle may accept performance from an entity other than the Debtors. Oracle reserves its right to be heard on this issue until after the Oracle Agreement the Debtors seek to assume and assign is identified with greater specificity.

### C. The Debtors May Not Have Provided the Correct Cure Amount.

Before assuming and assigning any executory contract, the Debtors must cure (or provide adequate assurance of a prompt cure of) any default under the subject contracts. 11 U.S.C. § 365(b)(1). The Debtors have identified a cure amount of $0.00 for the Oracle Agreement. However, since the Debtors have failed to provide a clear and complete description of the contract they seek to assume and assign, Oracle is unable to determine whether the cure amount is accurate. Oracle also notes that Invoice Nos. 2261485 and 2256028 are set to come due within the coming weeks. To the extent these invoices remain outstanding at the time the closing of the sale occurs, Oracle reserves all rights to demand their payment from the appropriate party. Oracle needs more information about which Oracle agreement may be assumed and assigned in order to

---

[2] *In re Hawker Beechcraft, Inc.*, No. 12-11873 (SMB), 2013 WL 2663193, at *3 (Bankr. S.D.N.Y. June 13, 2013) ("State law governs the question whether an agreement is divisible or indivisible for the purposes of assumption and rejection under Bankruptcy Code § 365.")

confirm the accuracy of the proposed cure amount. Therefore, Oracle reserves its right to be heard further regarding the appropriate cure until the contract the Debtors seek to assume and assign is identified with greater specificity.

> **D. The Debtors Have Not Provided Adequate Assurance of Future Performance by the Assignee.**

Before assuming and assigning any executory contract, the Debtors must provide adequate assurance of future performance. 11 U.S.C. § 365(b)(1). As of the date of this Rights Reservation, no adequate assurance information regarding the Stalking Horse has been provided and the Stalking Horse may not be the ultimate purchaser.[3]

To satisfy Bankruptcy Code section 365(b), Oracle requests that the Debtors provide the following information: (1) financial bona fides; (2) confirmation that the purchaser is not an Oracle competitor; and (3) confirmation that the ultimate assignee will (a) execute an Oracle Assignment Agreement and related documentation which identifies with specificity the Oracle executory contract(s) to be assigned; and, if appropriate (b) enter into an Oracle Master License Agreement. Absent these assurances, Oracle cannot determine the proposed assignee's creditworthiness, its suitability as an Oracle customer, or its ability to adequately perform under the terms of the Oracle Agreement. Until the information described above is provided, the Debtors have not complied with the requirements of section 365(b)(1)(C).

> **E. The Oracle Agreement Does Not Authorize Simultaneous Use by the Debtors and the Stalking Horse.**

The APA contemplates that certain transition services may be provided via a TSA. To date, neither a copy of the TSA nor its schedules have been filed with the Court. These omissions preclude Oracle from determining how, or if, its contracts may be affected.

Simultaneous use of, and access to, Oracle's licensed software may exceed the scope of the permitted uses under the Oracle Agreement. Such usage would potentially result in an unauthorized "splitting" of the licenses between the Debtors and the Stalking Horse. Oracle objects to the extent that any transitional or shared use arrangement purports to grant to both the

---

[3] Again, Oracle is aware of the Debtors' recently-filed Notice of Cancellation of Auction, but makes this point in an abundance of caution.

Debtors and the Stalking Horse the right to shared use of the Oracle licenses beyond the licenses' terms. Oracle reserves all rights regarding any transitional use, including under any final APA or TSA, pending Oracle's further review of the same.

## IV.   CONCLUSION

For the reasons set forth above, Oracle respectfully requests that the Court deny the Debtors' request for authority to assume and assign, transfer or share use of the Oracle Agreement, or any other Oracle agreement. Oracle reserves its right to be heard further on all issues set forth herein.

DATED:  September 19, 2025

**JONES & WALDEN LLC**
*/s/ Eric J. Breithaupt*
Eric J. Breithaupt
Georgia Bar No. 596142
699 Piedmont Avenue NE
Atlanta, GA 30308
(404) 564-9300
EBreithaupt@joneswalden.com

Local Counsel for Oracle America, Inc.

Shawn M. Christianson
Arlen Moradi
**BUCHALTER, A Professional Corporation**
425 Market Street, Suite 2900
San Francisco, California 94105
Telephone:  (415) 227-0900
Facsimile:  (415) 227-0770
schristianson@buchalter.com
amoradi@buchalter.com

**ORACLE AMERICA, INC.**
Peggy Bruggman
Colin Farrell
500 Oracle Parkway
Redwood City, California 94065
Telephone: (650) 506-5200
Facsimile: (650) 506-7114

Attorneys for Oracle

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE:<br><br>**WELLMADE FLOOR COVERINGS INTERNATIONAL, INC.,** *et al.*,<br><br>Debtors, | CHAPTER 11<br><br>CASE NO. 25-58764-sms<br><br>**(Jointly Administered)** |

### **CERTIFCATE OF SERVICE**

I hereby certify that I have this day filed the foregoing *Oracle's Limited Objection to and Reservation of Rights Regarding Debtors' Sale Motion and Related Notice of Proposed Assumption and Assignment of Certain Executory Contracts* **(**the "Objection") with the Clerk of Court using the CM/ECF system which will automatically send an e-mail notification of such filing to the parties or attorneys of record:

- **Shawn M. Christianson**   schristianson@buchalter.com, cmcintire@buchalter.com
- **Christopher K. Coleman**   christopher.coleman@kslaw.com
- **John D. Elrod**   elrodj@gtlaw.com, fieldss@gtlaw.com,allison.mcgregor@gtlaw.com
- **Will B. Geer**   wgeer@rlkglaw.com, dsideris@rlkglaw.com;willgeer@ecf.courtdrive.com;2836@notices.nextchapterbk.com;6717577420@filings.docketbird.com;emiller@rlkglaw.com;lmassey@rlkglaw.com;lpolvino@rlkglaw.com
- **Aaron Michael Halegua**   ah@aaronhalegua.com, 7457448420@filings.docketbird.com
- **Anna Mari Humnicky**   ahumnicky@smallherrin.com, klemons@smallherrin.com; kweindorf@smallherrin.com
- **Sameer Kapoor**   skapoor@phrd.com, elyttle@phrd.com
- **Benjamin S. Klehr**   bklehr@smallherrin.com, klemons@smallherrin.com; kweindorf@smallherrin.com
- **Lindsay P. S. Kolba**   lindsay.p.kolba@usdoj.gov
- **Cia H. Mackle**   cmackle@pszjlaw.com
- **Mark S. Marani**   mmarani@cpmtlaw.com, jpenston@cpmtlaw.com; ddouglas@cpmtlaw.com
- **Allison Jane McGregor**   allison.mcgregor@gtlaw.com, fieldss@gtlaw.com
- **Quan Andy Thanh Nguyen**   anguyen@smallherrin.com, kweindorf@smallherrin.com ,klemons@smallherrin.com
- **Patrick James Reid**   patrick@theworkersfirm.com
- **Bradford J. Sandler**   bsandler@pszjlaw.com
- **Gus H. Small**   gsmall@smallherrin.com, klemons@smallherrin.com
- **A. Todd Sprinkle**   toddsprinkle@parkerpoe.com, wandaclay@parkerpoe.com; courtneyvolz@parkerpoe.com
- **Bruce Z. Walker**   bwalker@cpmtlaw.com, jpenston@cpmtlaw.com
- **Daniel Werner**   dwerner@radfordscott.com, dwerner@ecf.courtdrive.com
- **Elaine Woo**   ewoo@radfordscott.com

This 19th day of September, 2025.

                **JONES & WALDEN LLC**

                */s/ Eric J. Breithaupt*
                Eric J. Breithaupt
                Georgia Bar No. 596142
                699 Piedmont Avenue NE
                Atlanta, Georgia 30308
                (404) 564-9300
                EBreithaupt@joneswalden.com
                *Local Counsel for Oracle America, Inc.*