# IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| In re:<br><br>WELLMADE FLOOR COVERINGS<br>INTERNATIONAL, INC., et al.,<br><br>Debtors. | Chapter 11<br>Case No. 25-58764<br>(Jointly Administered) |



*Filed in U.S. Bankruptcy Court*
*Northern District of Georgia*
*Vania S. Allen, Clerk*

*JUN - 8 2026*

*By:*

*Deputy Clerk*

**OBJECTION OF CREDITOR BO DENG**
**TO MOTION FOR ENTRY OF ORDER**
**APPROVING SETTLEMENT AND COMPROMISE (DOCKET #0379)**

I, Bo Deng, am a former employee of the Debtors and a creditor in these Chapter 11 cases. I hereby submit this formal objection to the Motion for Entry of an Order Approving Settlement and Compromise.

**Grounds for Objection:**

**A. My Exclusion From This Settlement Is Deeply Unfair**

I worked at Wellmade from July 2022 through March 2024 and again from June 2024 through November 2025. I am one of the longest-serving employees at that facility — longer than many of the workers who are included in this settlement. I was subjected to the exact same labor trafficking conditions. I worked the same brutal hours. I suffered the same harm.

During both periods of my employment I consistently worked six or more days per week and more than 12 hours per day. I was never paid proper overtime. I was recruited from China under false promises and subjected to forced labor conditions. My total claims are not less than $4,954,774.35 including unpaid overtime wages, liquidated damages, emotional distress damages, punitive damages, and damages under Georgia RICO as set forth in detail in my simultaneously filed Proof of Claim and Motion for Leave to File Late Proof of Claim. Supporting documentation of my employment is attached hereto as Exhibit A.

The workers included in this settlement had lawyers. I had no lawyer. I received no meaningful notice. The only difference between me and those workers is not the harm we suffered — it is that they had legal representation and I did not.

It is fundamentally wrong to approve a settlement that compensates some victims of the same crime while permanently cutting out others who suffered equally or more, simply because they had no lawyer and received a notice in a language they cannot read.

**B. The Debtors' Refusal to Negotiate With Late Filers Makes Court Intervention More Important**

I have been informed from Aaron Halegua that the Debtors are unwilling to negotiate with workers who filed their proof of claim late. If this is true, then without the Court's intervention I have no path to any compensation at all — not because my claims are weak, but purely because of a procedural deadline that I had no meaningful opportunity to meet.

My claims total not less than $4,954,774.35. I worked at Wellmade longer than almost anyone. The idea that I should receive nothing while workers with identical claims receive compensation — solely because the Debtors sent an English-only notice to workers they knew could not read English, and are now using that as a shield — is exactly the kind of injustice that courts exist to prevent.

**C. I Was Given No Meaningful Notice**

I never saw the bankruptcy notice before the bar date. If a notice was sent, it was not sent by certified mail. Nobody asked me to sign for it. I had no way of knowing it had arrived, and the bar date has now passed.

**D. Even If I Had Seen the Notice, I Was Unable to Understand Its Meaning or Act on My Rights**

Even if I had seen the notice, I had no way of understanding its importance. The notice was mostly written in English, and the first page was long and entirely in English. Because of my lack of legal knowledge and limited English, I could not understand what the notice meant or that it required me to take action. The notice was not written in Chinese, and nothing in it told us in Chinese that we had the right to file claims for unpaid overtime or for being victims of forced labor.

More importantly, throughout my employment, the company constantly conveyed to us that the rules for Chinese workers were different from those for Americans—that we had no right to overtime pay and that we were not supposed to question this. We were told not to think too much about it, that Americans could refuse to work but we had to obey. The Chinese-language employment contracts the company made us sign

were full of words like "obey" and "submit." From the moment I arrived in the United States on June 30, 2022, the company took my passport and never returned it to me. During the entire time I worked there, I was subjected to severe gaslighting, brainwashing, and control by the company, and I was made to believe that I had no rights I could assert. I did not know I had the right to seek unpaid overtime wages or to file a claim as a victim of forced labor.

For these reasons, even if a notice had reached me, I was not in a position to understand it or to act on any rights it described. Denying my claim under these circumstances would be unjust.

**E. I Tried to Find a Lawyer But Could Not**

When I eventually learned about the bankruptcy proceedings I reached out to attorney Aaron Halegua in January 2026. He replied in February 2026 and told me it was too late for me to join the existing case. After that I had no way to find another attorney. I do not speak or read English. I cannot make calls or search for help in English. I was left completely alone with no legal support.

**F. Approving This Settlement Now Would Permanently Harm Me**

If this settlement is approved as written, with no protection for my claims, I may lose my rights permanently. I will have no recourse against the Debtors or the Individual Defendants. My claims of over $4.95 million — representing years of unpaid wages, exploitation, and personal injury — would be extinguished without me ever having a fair chance to participate.

This Court has the power to prevent this outcome. I am asking the Court to use that power.

**Relief Requested:**

I respectfully request that the Court:

1. Deny or delay approval of this settlement until my Motion for Leave to File Late Proof of Claim is resolved
2. Order that I be given a fair opportunity to participate in settlement negotiations on equal terms with the named Labor Plaintiffs before any settlement is approved, given that my claims arise from identical conduct and I was excluded solely because I received no meaningful notice and had no legal representation
3. If the settlement is approved, order that it shall not affect, release, or extinguish my individual claims in any way and that I retain all rights to pursue my claims in full
4. Grant any other relief the Court finds just and proper

Respectfully submitted,

*Bo Deng*

Bo Deng

Pro Se Creditor

8006 Rocky Creek Dr

Columbus, GA 31904

Dengbo19910708@qq.com

4709824165 (I speak no English, Chinese only)

Date: June, 5 , 2026

Exhibit A See below

---

CERTIFICATE OF SERVICE

I certify that on  June, 5, 2026 I sent copies of this Motion by email and first class mail or priority mail to:

John D. Elrod / Allison J. McGregor

Greenberg Traurig LLP

Terminus 200, 3333 Piedmont Road NE

Suite 2500, Atlanta GA 30305

elrodj@gtlaw.com

Allison.McGregor@gtlaw.com

*Bo Deng*

Bo Deng

Date: June, ___5___ , 2026

**10:14**

# +22,549.06

Balance: 22,739. 35

| | |
|---|---|
| Trading Card Number | 6212254301000690867 |
| Transaction account | 4301000501001166231 |
| Trading account name | Deng Bo |
| Trading hours | 2022–08–17 10:51:13 |
| Business Summary | Wages |
| Trading Place | Batch Service |
| Transaction Amount | 22,549.06 |
| Country of Transaction Short Name | CHN |
| Account Amount | 22,549.06 |
| Accounting Currency | RMB |

| | |
|---|---|
| Opposite account | 4301****5848 |
| Other account name | Jiangsu Yuanmei Bamboo& Wood Industry Co., Ltd |
| Opposite account line | Commercial Bank of China |

Query complete transaction card number or account

Fold up ▲

**10:17**   .ıl 🛜 32

< Details of income
and expenditure   ⤓

# +22,589.37

Balance: 23,461. 87

| | |
|---|---|
| Trading Card Number | 6212254301000690867 |
| Transaction account | 4301000501001166231 |
| Trading account name | Deng Bo |
| Trading hours | 2022–12–23 10:47:19 |
| Business Summary | Wages |
| Transaction Amount | 22,589.37 |
| Country of Transaction Short Name | CHN |
| Account Amount | 22,589.37 |
| Accounting Currency | RMB |
| Opposite account | 4301****5848 |
| Other account name | Jiangsu Yuanmei Bamboo& Wood Industry Co., Ltd |
| Opposite account line | Commercial Bank of China |

Query complete transaction card number or account

Fold up ▲

**7:05**    .ıl  📶 🔋100

‹    Details of income
and expenditure

# +21,406.80

Balance: 24,777. 43

| | |
|---|---|
| Trading Card Number | 6212254301000690867 |
| Transaction account | 4301000501001166231 |
| Trading account name | Deng Bo |
| Trading hours | 2024–01–16 10:48:17 |
| Business Summary | Wages |
| Trading Place | Online banking |
| Transaction Amount | 21,406.80 |
| Country of Transaction Short Name | CHN |
| Account Amount | 21,406.80 |
| Accounting Currency | RMB |

| | |
|---|---|
| Opposite account | 4301****2772 |
| Other account name | Nanjing Huyu Import and Export Trade Co., Ltd |
| Opposite account line | Business Office of Nanjing Gaochun Branch |

Query complete transaction card number or account

Fold up ▲

| Copy B To Be Filed With Employee's FEDERAL Tax Return | 2024 | OMB No. 1545-0008 |
|---|---|---|

| a | 1 Wages, tips, other comp. 32605.07 | 2 Federal income tax withheld 3239.08 |
|---|---|---|
| 798 | 3 Social security wages 32605.07 | 4 Social security tax withheld 2021.51 |
| nber | | |
| )58 | 5 Medicare wages and tips 32605.07 | 6 Medicare tax withheld 472.78 |

c Employer's name, address, and ZIP code
WELLMADE INDUSTRIES MFR NA LLC
PO Box 116
Lagrange, GA 30241

d Control Number
135787 654

e Employee's name, address, and ZIP code
Deng Bo
1 Wellmade Dr
Cartersville, GA 30121-7208

| 7 Social security tips | 8 Allocated tips | 9 Advance EIC payment |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans | 12a Code DD 458.04 |
| 13 Statutory employee | 14 Other | 12b Code |
| Retirement plan | | 12c Code |
| 3rd party sick pay | | 12d Code |

| GA 3391698-WQ | 32605.07 | 1434.01 |
|---|---|---|
| 15 State Emplr.'s state I.D. # | 16 State wages, tips, etc. | 17 State income tax |
| 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

Form W-2 Wage and Tax Statement                    Dept. of the Treasury - IRS

| Copy D EMPLOYEE'S RECORDS (See ...loyee on back of Copy B.) | 2024 | OMB No. 1545-0008 |
|---|---|---|

| | 1 Wages, tips, other comp. 32605.07 | 2 Federal income tax withheld 3239.08 |
|---|---|---|
| 98 | 3 Social security wages 32605.07 | 4 Social security tax withheld 2021.51 |
| b nber | | |
| )58 | 5 Medicare wages and tips 32605.07 | 6 Medicare tax withheld 472.78 |

c Employer's name, address, and ZIP code
WELLMADE INDUSTRIES MFR NA LLC
PO Box 116
Lagrange, GA 30241

d Control Number
135787 654

e Employee's name, address, and ZIP code
Deng Bo
1 Wellmade Dr
Cartersville, GA 30121-7208

| 7 Social security tips | 8 Allocated tips | 9 Advance EIC payment |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans | 12a Code DD 458.04 |
| 13 Statutory employee | 14 Other | 12b Code |
| Retirement plan | | 12c Code |
| 3rd party sick pay | | 12d Code |

| GA 3391698-WQ | 32605.07 | 1434.01 |
|---|---|---|
| 15 State Emplr.'s state I.D. # | 16 State wages, tips, etc. | 17 State income tax |
| 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

Form W-2 Wage and Tax Statement                    Dept. of the Treasury - IRS

| Copy C - FOR EMPLOYEE'S RECORDS ONLY | **2025** | OMB No. 1545-0008 |
|---|---|---|

| a Employee's social security number ... er '798 | 1 Wages, tips, other comp. 58410.33 | 2 Federal income tax withheld 5309.20 |
|---|---|---|
| | 3 Social security wages 58410.33 | 4 Social security tax withheld 3621.43 |
| b ...iber 058 | 5 Medicare wages and tips 58410.33 | 6 Medicare tax withheld 846.95 |

c Employer's name, address, and ZIP code

WELLMADE INDUSTRIES MFR NA LLC
PO Box 116
Lagrange, GA 30241

d Control number
135787654

e Employee's name, address, and ZIP code

Deng Bo
66 Seminole Rd
Cartersville, GA 30121-7208

| 7 Social security tips | 8 Allocated tips | 9 Advance EIC payment |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans | |

| 12a DD  1218.01 | 13 Statutory employee   Retirement plan   3rd-party sick pay |
|---|---|
| 12b | 14 Other |
| 12c | |
| 12d | |

| GA | 3391698-WQ | 58410.33 | 2483.94 |
|---|---|---|---|
| 15 State Employer's State ID# | | 16 State wages, tips, etc. | 17 State income tax |

| 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|
| N/A | N/A | N/A |

**Form W-2 Wage and Tax Statement**                         Dept. of the Treasury - IRS

This information is being furnished to the IRS. If you are required to file a tax return, a negligence penalty/other sanction may be imposed on you if this income is taxable and you fail to report it.

Printed by Paylocity Payroll
Page 2 of 2

Labor Dispatch Agreement

Party A: Jiangsu Yuanmei Bamboo and Wood Industry Co., Ltd.

Party B: Deng Bo

( ID No.: 511527199203060310

Passport No.: )

In order to assist the production of HDPC flooring by the American parent company in the American factory, Party A needs to send its technical workers to the American factory for technical guidance. The working place is located in Cartersville ( GA ), Georgia, USA. On th basis of equality, willingness, fairness, honesty and trustworthiness, Party A and Party B reach the following contract through negotiation:

I. Term of Contract

1. The overseas dispatch period shall be five years ( from _ _ to _ _ ) starting from the date of Party B's departure for the United States. Party A has the right to extend or shorten the contract period appropriately according to the work needs.

2. The Contract shall come into effect as of the date when Party B leaves the country.

II. Job Position and Working Hours

1. The position of Party B is the extrusion startup engineer, and the job responsibilities and daily work contents of Party B shall be specifically arranged by the American factory accordir to actual needs.

2. Party B's work, rest and vacation shall be subject to the arrangement of Americar factory.

3. During Party B's stay in the United States, when the American factory requires Party B to work overtime according to the work needs, except for force majeure, Party B shall cooperate and obey the overtime management of the American factory, and the overtime pay / leave adjustment shall be implemented according to the relevant systems of the American factory.

III. Wages and remuneration

(I) When the visa type held by Party B is B1 visa:

1. After Party B obtains B1 visa to work in the United States, Party A shall pay RMB to Party B's domestic salary card account ( personal income tax shall be borne by itself ). Party B's salary is divided into two parts, including 1 basic salary ¥ 12000 yuan / month and 2 overseas allowance ¥ 15000 yuan / month. Pai A shall pay 12 to Party B's domestic personal bank on a monthly basis before the end of next month

Salary account, the second part is benchmark performance bonus and overtime _ 65000 yuan / year, wh

shall be paid by Party A to Party B's domestic personal bank salary account in one lump sum before Jan

31 of the following year. During the period of returning to China (including quarantine period during

epidemic period and family visit holiday), it shall be paid uniformly according to domestic salary.

2. Party A shall pay social insurance for Party B according to the social insurance system stipulated by the state

3. Party A shall purchase relevant overseas accident and medical insurance for Party B according to the type and vali-
period of Party B's visa.

IV. Party A shall undertake the following responsibilities and
obligations:

1. Respect the ethnic customs of dispatched personnel and safeguard their legitimate rights and
interests.

2. The American factory shall provide Party B with necessary office space, working

conditions and labor protection: the American factory shall provide Party B with

accommodation and commuter transportation.

3. If the personnel dispatched by Party B are injured, disabled or killed due to industrial

accidents during their work in the American factory, the American factory shall actively

take rescue measures and inform Party A and Party B and their families of the accident i

time. All expenses incurred shall be borne by the insurance company.

4. The American factory shall timely feed back the work, training and assessment of dispatched
personnel to Party A in written form as the basis for Party A to assess Party B's work performance.

6. If Party B is unable to obtain a visa due to personal reasons or uncontrollable manpower, Party A may
arrange for him to work in China, and his salary shall be subject to China; Or Party B may propose to
resign, and Party A will handle the resignation formalities for him according to regulations.

V. Party A enjoys the following rights

1. Party A may give Party B a probation period of 3 months at home or abroad, and has the right to terminate the

probation of unqualified personnel, but shall pay labor remuneration during the probation period according to

regulations. If Party B intentionally conceals his skill level, does not meet Party A's requirements, or does not comply w

the company management system of American factories, and does not obey orders and commands, Party A has the ri

to dismiss Party B and deduct the expenses incurred by Party B going abroad from about RMB 30000.

2. Party A has the right to dismiss Party B's personnel who have committed the following acts, but

shall notify Party B in writing 3 days in advance. The details are as follows:

(1) Serious violation of labor discipline and rules and
regulations;

(2) Serious dereliction of duty, causing losses of more than 5000 yuan to the
interests of Party A;

(3) being investigated for criminal
responsibility according to law;

(4) Party B fails to meet the employment conditions of Part
during the probation period:

Miyuki

Salary account, the second part is benchmark performance bonus and overtime _ 65000 yuan / year, wh

shall be paid by Party A to Party B's domestic personal bank salary account in one lump sum before Jan

31 of the following year. During the period of returning to China ( including quarantine period during

epidemic period and family visit holiday ), it shall be paid uniformly according to domestic salary.

2. Party A shall pay social insurance for Party B according to the social insurance system stipulated by the state

3. Party A shall purchase relevant overseas accident and medical Insurance for Party B according to the type and vali period of Party B's visa.

IV. Party A shall undertake the following responsibilities and obligations:

1. Respect the ethnic customs of dispatched personnel and saleguard their legitimate rights and interests.

2. The American factory shall provide Party B with necessary office space, working

conditions and labor protection: the American factory shall provide Party B with

accommodation and commuter transportation.

3. If the personnel dispatched by Party B are injured, disabled or killed due to industrial accidents during their work in the American factory, the American factory shall actively take rescue measures and inform Party A and Party B and their families of the accident i time. All expenses incurred shall be borne by the insurance company.

4. The American factory shall timely feed back the work, training and assessment of dispatched personnel to Party A in written form as the basis for Party A to assess Party B's work performance.

6. If Party B is unable to obtain a visa due to personal reasons or uncontrollable manpower, Party A may arrange for him to work in China, and his salary shall be subject to China; Or Party B may propose to resign, and Party A will handle the resignation formalities for him according to regulations.

V. Party A enjoys the following rights

1. Party A may give Party B a probation period of 3 months at home or abroad, and has the right to terminate the probation of unqualified personnel, but shall pay labor remuneration during the probation period according to regulations. If Party B intentionally conceals his skill level, does not meet Party A's requirements, or does not comply w the company management system of American factories, and does not obey orders and commands, Party A has the ri to dismiss Party B and deduct the expenses incurred by Party B going abroad from about RMB 30000.

2. Party A has the right to dismiss Party B's personnel who have committed the following acts, but shall notify Party B in writing 3 days in advance. The details are as follows:

( 1 ) Serious violation of labor discipline and rules and regulations;

( 2 ) Serious dereliction of duty, causing losses of more than 5000 yuan to the interests of Party A;

( 3 ) being investigated for criminal responsibility according to law;

( 4 ) Party B fails to meet the employment conditions of Part during the probation period:

Page 2 of 5

(5) Incompetent work, unqualified in the assessment period, or unqualified in continuous / cumulative _ times of assessment.

3. Party A has the right to terminate this contract and notify Party B one week in advance when Party A's business shrinks or Party B is incompetent for Party A's work.

VI. Party B shall undertake the following responsibilities and obligations.

1. Party B shall formally issue [ Confirmation Form of Voluntary Going Abroad ] ( Physical Examination Form ) ( Post Certificate of Special Type of Work ) ( Commitment Letter of Skill Guarantee ) to Party A before applying for a visa for going abroad, and assist Party A in handling necessary formalities for going abroad.

2. Party B shall ensure good health, free from bad habits, hidden diseases and infectious diseases, etc. Party B shall go to the designated hospital to complete the recruitment and outbound related physical examination, including but not limited to: liver function, electrocardiogram, internal and surgical examinations, ear, nose, throat, ophthalmology and other examinations, and the physical examination expenses shall be borne by Party B. If Party B conceals the recurrence of physical illness after going abroad, or is found to be unable to engage in this work by the local hospital, Party A has the right to terminate the contract and dismiss back to China, and all expenses incurred shall be borne by Party B.

3. Before signing the Contract, Party B shall not conceal all criminal records in China, as well any record of violation of laws and disciplines during previous work abroad and history of participating in any form of strike. In case of concealment, Party A has the right to terminate contract, and all losses caused shall be borne by Party B.

STRI Limited

4. Party B shall strictly abide by various management rules and regulations of Party A and American factory, and complete work tasks with high quality and efficiency. 5. If Party B intentionally or unintentionally causes heavy losses due to breach of the contract, failure to keep trade secrets, or other acts, Party A has the right to investiga and compensate Party B, and serious acts will be transferred to judicial treatment.



6. Before joining Party A's company, Party B has been informed that Party B must work in the American factory for year, and Party B must abide by the company management system of Party A and the American factory, obey orde and commands. If Party A leaves the post without reason, Party A will report its behavior to the local judicial department, send it back to China, and recover liquidated damages of 30% of Party B's annual salary.

7. Party B and his family members shall love the motherland, shall not participate in any form of local social organizations in the United States, and shall not publish or talk about any national issues. Party shall immediately terminate the Contract and hand over his personal information to the local Chinese Embassy upon discovery of any improper behavior.

8. During the contract period, if Party B voluntarily proposes to terminate the contract, it shall notify Party A three months in advance. With the consent of Party A, Party B shall handle relevant formalities according to Party A's employee system.

9. Party B declares that when signing and performing the Contract, Party B shall voluntarily and strictly abide by various rules and regulations of Party A and American factory, including but not limited to code conduct and confidentiality agreement.

VII. Party B shall enjoy the following rights:

1. Party B has the right to submit written opinions and claims for Party A's violation of relevant clauses this Agreement or Infringement of Party B's legitimate rights and Interests. Party A shall reply to Party E written form within 15 working days after receiving Party B's comments. 2. Party B has the right to put forward a request for economic compensation for Party A's unauthorized dissolution of this Agreemen due to violation of the Labor Contract Law and this Agreement, and Party A shall pay compensation to Party B in accordance with the relevant provisions and standards of the Labor Contract Law.

3. Party B's medical expenses during the assignment period shall be reimbursed according to the overseas insurance clauses purchased by Party A.

4. Party B shall have a 15-day opportunity to return home to visit relatives once a year during the assignment period, and Party A shall reimburse Party B for all round-trip transportation expenses. If it is still required to return home or extend the holiday time after the end of annual leave, Party A shall agree, and relevant visa processing fees and transportation expenses shall be borne by Party B.

VIII. Other Agreed Matters:

1. Party B, as a citizen of the People's Republic of China, will not participate in any form of social organizations in the United States and the local area, and will not publish or talk about any issues at t national level during his stay in the United States with the aim of loving the motherland.

2. Party B shall obey the work arrangement of the American factory during his working in the United States, and shall not leave the working and living area without consent.

3. Party B shall strictly abide by the local laws and regulations of China and the United States during his work in the United States, and shall not participate in gambling, alcoholism, drug abuse, fighting, pickin quarrels and provoking trouble and other bad actions. In case of any violation of laws and disciplines, Pi B shall bear all responsibilities. If any damage is caused to Party A or the American factory, Party A has th right to pursue Party B for corresponding compensation.





IX. This Agreement is made in duplicate, one for each party, and shall come into effect after bei signed and sealed by both parties.

X. In case of any labor dispute between Party A and Party B during the performance of this Contract, it shall be settled through negotiation. If negotiation fails, it can be settled through the labor arbitration institution. Party A and Party B agree that the labor bureau where Party A is located shall be the first arbitration institution.

Party A ( signature ):

Conuzciog
neomionutue



AM 1201006

Party B ( signature ):
Seal

Identity card number: 5157 1330 1000 210

Tel: 1582435666

romty mombes of Party B |
ugnature |

ID No.:

Contact
Phone:

Year, Month and Day



## Dispatch Agreement

Party A: Nanjing Huyu Import and Export Trade Co., Ltd

# Party B: _____

( ID No.: 51152719903060370, Passport No.: E 5312638 )

Party A is a wholly owned company of the U. S. company Wellmade Floor Coverings Internation.

Inc.) ) in China, and Party A intends to assign Party B to work in the U. S. factory due to the

employment needs of the U. S. company's U. S. factory ( hereinafter referred to as " U. S. factory

On the basis of equality, free will, fairness, honesty and trustworthiness, Party A and Party B hav

reached the following agreement through friendly negotiation:

1. Party A shall apply for L1 work visa for Party B in the United States, and the relevant expenses for visa application shall be borne by Part

2. Party B actively cooperates with Party A to apply for L1 work visa in the United States;

3. Once Party B's American L1 work visa is approved, Party B shall work in an American factory as agreed by both parties, and the place of work is Cartersvill ( GA ), Georgia, USA. If Party B has signed a labor contract in China in the early stage, the labor contract signed in China in the early stage will be automatically invalid after the L1 visa is successful:

4. If Party B fails to work in the art factory as promised after being granted an American L1 work visa, Party B shall bear all losses ( US $ 30000 ) caused to Party A ..

5. After Party B is granted the LI visa, Party A shall dispatch Party B to work as a mainframe operator in the American factory, and the working period shall be calculated from the successful LI visa of Party B for five years. Party A and Party B may, according to the work nee

1



美国邀请函.



**Wellmade®**
PERFORMANCE FLOORING

**Date: November 28, 2021**

**Mr. Bo, Deng**

| | |
|---|---|
| Passport Number: | EJ5312638; Date of Birth: March 06, 1992 |
| Position: | Extrusion Engineer, **Wellmade Floor Industries, Ltd. (Wellmade China)** |
| Address: | No.17 Jingshan East Road, Gaochun Economy Zone Nanjing, 211300 China |
| Tel: | (86)25-57356000 | Fax: (86)25-57356333 |

**Visa Section**
**U.S. Consulate General**

Dear Visa officer,

Wellmade Floor Coverings International, Inc. (WFCI) cordially, <u>on an urgent basis</u>, invites Mr. Deng, Bo, Extrusion Engineer at Wellmade Floor Industries, Ltd. (Wellmade China) to visit Wellmade Industries MFR. N.A. LLC, a division of WFCI.

We would like to ask Mr. Deng, Bo to arrive at our Wellmade's new manufacturing facility, Wellmade Industries MFR. N.A. LLC in Cartersville, GA, USA.

Mr. Deng's will inspect and instruct installation on the extrusion system equipment in the new factory. The extrusion system equipment is responsible for extruding raw material into semi-finish rigid core flooring products. It is the largest and most important production line in the factory. He will inspect the machines from delivery to installation to testing. He will also develop maintenance plans, and conduct machine training sessions. Mr. Deng will help Wellmade in starting up our new Georgia factory, an $35 million manufacturing investment project with planned 240 jobs on board in Bartow County, Georgia.

WFCI, an Oregon Corporation, has provided hard surface flooring collections to customers throughout the United States since 2001. Mr. Deng's visit is integral to the success of Wellmade's "Made in the USA" initiative, also ensuring the new Cartersville 328,000 SF new factory comply with all required quality control systems, clean environment, and safety regulations.

www.wellmadefloors.com

phone: 866.582.0848  •  fax: 503.582.8402  •  26300 SW 95th Avenue, Suite 103  •  Wilsonville, Oregon, 97070

6/27/22, 3:14 PM

Print My Trips

# ICN ▸ SEA

**ON TIME**

Airport Maps: ICN | SEA

Aircraft: Airbus A330-900neo
Flight Time: 10hr 30m
On Time % : N/A
Miles Flown: 5,194

DEPART: 2:50 PM*

ARRIVE: 9:20 AM

MAIN CABIN (V)

TERMINAL 2

Baggage & Service Fees

MEAL SERVICES : Dinner , Light Meal , Drinks , Anytime Snack

🛜 Medium

In-Flight services and amenities may vary and are subject to change.

PASSENGER STATUS: CONFIRMED

LAYOVER IN SEATTLE, WA 2HR 34M

**Flight DL 869**

THU, 30 JUN 2022

2 DAYS FROM DEPARTURE

Find Sky Club Locations:
Seattle-Tacoma Intl - SEA
Hartsfield – Jackson Acianta

# SEA ▸ ATL

**ON TIME**

SEAT: 26C

Airport Maps: SEA | ATL

DEPART: 11:54 AM*

ARRIVE: 7:44 PM

MAIN CABIN (V)

DOMESTIC TERM-SOUTH

Aircraft: Boeing 757-300
Flight Time: 4hr 50m
On Time % : 61
Miles Flown: 2,182

MEAL SERVICES : Snacks , Drinks , Fresh Food for Purchase , Anytime Snack

Medium Retum K Baggage & Service Fees

In-Flight services and amenities may vary and are subject to change.

PASSENGER STATUS: CONFIRMED

## 👤 PASSENGER INFORMATION

| | NAME | FLIGHT | SEATS | SPECIAL SERVICE REQUESTS |
|---|---|---|---|---|
| 1 | BO DENG<br>eTicket #0062324121704 | PVG ▸ SEA | 44B<br>Main Cabin (V) | |

https://www.delta.com/mytrips/printItinerary.action

2/3



## ITINERARY

Airline Record Number / AIRLINE PNR: GOJGSX

Passenger Name / NAME: DENG/BO MR

Identification Code / ID NUMBER: EJ 531263:

Ticketing airline / ISSUING AIRLINE: DELTA AIR LINES

Ticketing Agent / ISSUING AGENT:

Reservation Record No. / 1E PNR: 7YFP8Q

Electronic ticket No. / ETKT NBR: 006 - 8099425316

Joint Ticket No. / CONJ NBR:

Date of issue / DATE OF ISSUE: May 27, 2024

Air Association No. / IATA CODE: 0831899

| ORIGIN/DES │ Airport of departure / airport of arriva | FLIGHT flight number | CLASS Class | DATE Departure Date | DEPARTURE TIME | ARRIVALTIME Arrival Time | STATUS Status | | ARRIVALTERMINAL ARRIVED AT TERMINAL |
|---|---|---|---|---|---|---|---|---|
| PVG/DTW | DL0388 | Economy | 2024-06-03 | 15:45 | 18:15 | OK | T1 | EM |
| DTW/ATL | DL1653 | Economy | 2024-06-03 | 21:20 | 23:20 | OK | EM | S |

Air fare / FARE: CNY 4324.00

Tax / TAX: CNY 2273.0C

Total amount / TOTAL: CNY 6597.00

NOTICE:

• PLEASE ARRIVE AT THE AIRPORT BEFORE THE CHECK-IN TIME SPECIFIED BY THE AIRLINE.

• DURING CHECK-IN, PLEASE PRODUCE YOUR VALID ID CARD USED WHEN YOU PURCHASE THE TICKET.

• TO FIND OUT MORE ABOUT THE REGULATIONS OF OTHER AIRLINES, PLEASE REFER TO THE RELEVANT AIRLINES OR AGENTS FOR MORE INFORMATION.

**U.S. Customs and Border Protection**

### Most Recent I-94

Admission (I-94) Record Number : 935145283A3

Most Recent Date of Entry: 2024 June 03

Class of Admission : L1A

Admit Until Date : 05/08/2027

Details provided on the I-94 Information form:

| | |
|---|---|
| Last/Surname : | DENG |
| First (Given) Name : | BO |
| Birth Date : | 1992 March 06 |
| Document Number : | EJ5312638 |
| Country of Citizenship : | China |

[ Get Travel History ]

▶ Effective April 26, 2013, DHS began automating the admission process. An alien lawfully admitted or paroled into [ ] is no longer required to be in possession of a preprinted Form I-94. A record of admission printed from the CBP web [ ] constitutes a lawful record of admission. See 8 CFR § 1.4(d).

▶ If an employer, local, state or federal agency requests admission information, present your admission (I-94) numb[ ] with any additional required documents requested by that employer or agency.

▶ Note: For security reasons, we recommend that you close your browser after you [ ] retrieving your I-9 number.

regarding your I-94, please click [ ]

[ility] Privacy Policy







MLY TO    9589 0710 5270 3692 3944 16

www.sfiprogram.org
SFI-00061

PAPER
POUCH

PRESS FIRMLY



FORTSON, GA 31808
JUN 05, 2026

30303

$22.60

RDC 03

S2324P502098-04

# UNITED STATES
# POSTAL SERVICE ®

# PRIORITY
# MAIL ®

elivery date specified for domestic use.

hipments include $100 of insurance (restrictions apply).*

king® service included for domestic and many international dest

ernational insurance.**

internationally, a customs declaration form is required.

not cover certain items. For details regarding claims exclusions see the
anual at *http://pe.usps.com*.

al Mail Manual at *http://pe.usps.com* for availability and limitations of coverage

# RATE ENVELOPE
■ ANY WEIGHT

KED ■ INSURED

**FROM:** Bo Deng

8006 Rocky Creek Dr

Columbus  GA 31904

U.S. Marshals Service
Atlanta, GA 30303
JUN 0 8 2026
CLEARED DATE

U.S. Marshals Service
Atlanta, GA 30303
JUN 0 8 2026
CLEARED DATE

**TO:** United States Bankruptcy
court clerk

Northern District of Georgia

75 Ted Turner Drive SW Suite 1340

Atlanta Georgia 30303

To schedule free Package Pic
scan the QR code.



USPS.COM/PICKUP



001000014

EP14F November 2025
OD: 12 1/2 x 9 1/2



PAPER
POUCH

how2recycle.info

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments.
Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; November 2025; All rights reserved.